# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Daryal V. Clay, | : | |
| | : | |
| et al., | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| | : | CV 06-0707 (RWR) |
| v. | : | |
| | : | |
| SOCIALIST PEOPLE'S LIBYAN | : | |
| ARAB JAMAHIRIYA (Libya) | : | |
| | : | |
| et al. | : | |
| | : | |
| Defendants | : | |

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO LIBYA'S MOTION TO DISMISS

## TABLE OF CONTENTS

**Procedural Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Statement of Facts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

**Summary of Argument** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Argument** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    **I.**     <u>**STATUTORY BACKGROUND**</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    **II.**    <u>**BASED UPON THE EXPLICIT WORDING OF THE PERTINENT STATUTE, THE DC CIRCUIT HAS REJECTED LIBYA'S ARGUMENT THAT ITS REMOVAL FROM THE STATE DEPARTMENT LIST OF STATE SPONSORS OF TERRROISM AFFECTS THE COURT'S ASSERTION OF SUBJECT MATTER JURISDICTION**</u>. . . . . . . . . . . . 15

    **III.**   <u>**THE PLANTIFFS' ALLEGATIONS IN THIS CASE SATISFY THE REQUIREMENTS OF 28 U.S.C. § 1605(a)(7) AND ALLOW THE COURT TO ASSERT SUBJECT MATTER JURISDICTION OVER THE CASE**</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

    **IV.**   <u>**THE D.C. CIRCUIT HAS CONCLUSIVELY DECIDED THE ISSUE OF PERSONAL JURISDICTION AGAINST LIBYA**</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

    **V.**    <u>**FLATOW AMENDMENT DAMAGES**</u>. . . . . . . . . . . . . . . . . . . . . . . . .21

    **VI.**   <u>**THE COMPLAINT STATES A CAUSE OF ACTION AGAINST LIBYA**</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

        **A.**    **FLATOW AMENDMENT CAUSE OF ACTION** . . . . . . . . . . . . .21

        **B.**    **LIBYA INCORRECTLY INTERPRETS ACREE – PLAINTIFFS HAVE PROPERLY PLED STATE COMMON LAW CAUSES OF ACTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

    **VII.**  <u>**THE JOHN DOE CLAIMS**</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**Conclusion**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

COME NOW the Plaintiffs, by and through counsel, and hereby file this Memorandum of Points and Authorities in Opposition to Libya's Motion to Dismiss.  In opposition to said Motion, Plaintiffs rely on the following Memorandum.

## **PROCEDURAL BACKGROUND**

This case springs from the same set of events that resulted in the Libyan bombing of the LaBelle Discotheque, which occurred in 1986 and includes the same Defendants (but not the same Plaintiffs) as Beecham v. Socialist People's Libyan Arab Jamahiriya, 01-cv-02243 (RWR).

In Beecham, Libya's Motion to Dismiss has been denied except with respect to two grounds, subject matter jurisdiction due to an ongoing jurisdictional discovery dispute[1] and with regards to Plaintiffs' Flatow Amendment claims.  March 31, 2007 Order p. 2, Beecham v. Socialist People's Libyan Arab Jamahiriya, 01-cv-02243 (RWR) (filed March 31, 2007).

The complaint in this case was filed on April 21, 2006 and the complaint and summons were served on July 6, 2006.  Clay is one of the two winding up actions composed of US service personnel who for their own reasons did not file with either of the first two LaBelle claimants.  Harris and Clay are filed in order to ensure that no US serviceperson killed or injured in Libya's bombing of the LaBelle Discotheque will be left behind.  Libya's initial deadline to respond to the complaint was September 6, 2006.  Libya thereafter requested Plaintiffs join them in a consent motion to extend their response time to

---

[1] The principal dispute is now whether Libya even challenged the factual allegations of the complaint, which is required to justify a digression into jurisdictional discovery.  As recently as April 14, 2007, Libya refused to state whether it made such a challenge nearly three and a half years ago.  (Joint Report Regarding Jurisdictional Discovery p. 1-2, Beecham v. Socialist People's Libyan Arab Jamahiriya, 01-cv-02243 (RWR) (filed April 14, 2007)).

October 6, 2006. Plaintiffs consented to the motion, which extended Defendants' deadline to October 6, 2006, and the parties thereafter filed four joint requests to extend Defendants' time to file a responsive pleading. The cumulative effect of these joint motions extended Defendants' time to file until January 15, 2007.

Defendants filed a Motion to Dismiss Plaintiffs' complaint on January 15, 2007. On January 22, 2007, the parties then filed a consent motion to stay the case for 60 days until March 26, 2007. Plaintiffs and Defendants had requested a sixty day stay in order to analyze whether impending US-Libya government-to-government talks on the subject of the LaBelle Discotheque bombing might benefit the disposition of the case. The Court granted this request on January 25, 2007, which extended the due date for Plaintiffs' reply to March 26, 2007.

This case has therefore been stayed while government-to-government talks proceed with the aim of settling Beecham, which would likely resolve this case. As the Court is aware, Beecham v. Socialist People's Libyan Arab Jamahiriya has been stayed previously while parties entered into settlement negotiations either directly or through government-to-government talks. On March 21, 2007, in order to provide further time for the governments to conduct such talks, Plaintiffs and Defendants jointly requested another stay in this case, which extended Plaintiffs' time to file an opposition to Defendants' Motion to Dismiss until May 26, 2007.

On Friday June 1, after Counsel realized the stay had expired, he made plans to call counsel for Libya on the following workday, Monday June 4, to query whether the stay should be extended. On June 4, 2007 Counsel for Plaintiffs called Counsel for Defendants to determine whether another sixty day stay would be appropriate considering the ongoing nature of the government-to-government talks. During the June 4 conversation with

4

Counsel for Libya, he responded that he was without authority to consent, but also mentioned his consent might be complicated by the passing of the deadline to file the Opposition and said he would advise us as to his client's answer. Counsel for Libya was then asked whether he would consent to a 14 day stay to maintain the status quo ante while he contacted his clients. Again, Counsel replied he was without authority to respond. After the phonecall ended, Counsel for Plaintiffs then verified the deadline had passed and immediately drafted the ex parte motion for a temporary 14 day stay without waiting for Libya's consent in order to immediately bring the matter to the attention of the Court.[2] On June 5, 2007 counsel for Plaintiffs emailed Counsel for Libya to reiterate Plaintiffs' desire for a stay and requested Libya join them in the motion for a stay to push back the filing deadline for the Opposition.

On June 15, 2007, Libya filed an Opposition to Plaintiffs' Motion for a Stay, thereby rendering the motion for a 14 day stay a nullity. The very conditions that justified the seven previous joint extensions of time to file[3] in this case and the Harris case alone— the ongoing settlement discussions between the two governments—not only continue today, they are increasing in intensity. Thus the justification for the 60 stay grows more acute and Plaintiffs believe judicial resources that would be otherwise squandered would be conserved by a 60 day stay. Plaintiffs also file today a Fed. R. Civ. P. 6(b)(2) Motion to explain the expiration of the deadline, to file this Opposition to Libya's Motion to Dismiss and to ensure full protection of their claims.

---

[2] Counsel for Libya also notified counsel for Plaintiffs he would be traveling out of the country for the next 6-7 days.

[3] The Parties agreed to five extensions of time for the Libyans to file their response to the Complaint and then the Parties agreed to two extensions of time for the Plaintiffs to file their Opposition to Libya's Motion to Dismiss.

## STATEMENT OF FACTS

The bombing was carried out April 5, 1986 at the direction of Colonel Muammar Abu Minar al-Qadhafi, the de-facto head of the Libyan government, by and through the Libyan government's officials, employees and agents, Libyan government sponsored terrorist groups and Libyan government agents of Libyan and German nationality. (Complaint ¶6-7). Libya sponsored the perpetrators, within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605 note, by providing them with funding, planning, direction, and training for their terrorist activities. (Complaint ¶6). Al-Qadhafi provided material support and resources to those directly involved in the attack through the provision of funding, planning, direction, and training. (Complaint ¶6-7).

Lorenzo Alexander Harris was at the discothèque at the time of the attack and suffered permanent breathing abnormalities. He died four years later as a result of this physical injury. (Complaint ¶3). From the time of the attack until before his death, Lorenzo Alexander Harris suffered permanent physical injury, physical suffering and mental anguish and suffering, entitling his estate to compensatory damages. Complaint ¶21). Lorenzo Alexander Harris' death was caused by a willful and deliberate act of extra judicial killing and torture organized, planned and facilitated by Defendants Libya and JSO during the course of their terrorist act: bombing the discotheque. (Complaint ¶24).

The Defendants participated in a conspiracy to commit the state-sponsored terrorist bomb attack at the LaBelle Discotheque, and in the execution thereof. Each of the Defendants acted through their officials, employees and agents, including the individuals named in the complaint. (Complaint ¶6-7). The attack itself was carried out by persons associated with the Libyan secret intelligence service and the Jamahiriya Security Organization (JSO), including JSO member Musbah Abulgasem Eter. (Complaint ¶6).

Among the overt acts committed in furtherance of the conspiracy and the execution thereof were:

In furtherance of this planned attack a Libyan intelligence service courier, transported sub-machine guns, hand grenades and approximately 12 kg of explosives from Tripoli to East Berlin as diplomatic luggage.  (Complaint ¶8).

Defendants selected the LaBelle Discotheque in West Berlin, known to be frequented by large numbers of United States military personnel, as the target of the terrorist attack.  (Complaint ¶3).

On April 4, 1986, in preparation of the terrorist attack, Souad Chraidi transported approximately 3 kg of plastic explosive loaded with iron parts, a detonator and a delay timing device (timer) from the Libyan embassy in East Berlin to the apartment of Ali and Verena Chanaa in West Berlin.  (Complaint ¶8).  On April 4, 1986 at around 9:00 p.m. Yasser Chraidi, Ali Chanaa, Verena Chanaa and Eter made the final preparations for the terrorist attack at which time the detonator and timer were fitted into the explosive. (Complaint ¶9).  The explosive was concealed in a bag.  (Complaint ¶9).  After this, Eter said, "This is the answer to the Americans, a gift from Gadhafi to Reagan."  (Complaint ¶9).

At around 11:00 p.m. Verena Chanaa and Andrea Häusler brought the bomb into the LaBelle Discotheque, where the electrical delay timing device of the explosive was activated.  (Complaint ¶10).  The bag containing the bomb was placed at a seat in the center of the dance floor.  (Complaint ¶10).  On April 5, 1986 at around 1:35 a.m. Verena, Chanaa and Andrea Häusler left the LaBelle Discotheque.  (Complaint ¶10).  There were approximately 260 people in the discotheque at the time.  (Complaint ¶10).

The bomb exploded with great and destructive force at approximately 1:40 a.m. Three persons--Kenneth Terence Ford, James E. Goins, and Nermin Haney, a female Turkish citizen[4]--were killed.  (Complaint ¶11).  The explosive pressure tore off Mr. Ford's genitals, and separated his left lower-leg and his left arm from the trunk of his body.  (Complaint ¶11).  He sustained severe burns on his face and body.  (Complaint ¶11).  He died of shock and loss of blood.  (Complaint ¶11).  Both of Mr. Goins' lower-legs were ripped open and his bones shattered.  (Complaint ¶11).  Metal parts of the bomb penetrated his body and he sustained severe burns on his face and body.  (Complaint ¶11).  Despite an emergency operation, in which both legs were amputated, he later died from his injuries.  Nermin Haney had her left eye torn out and her left lower-leg cut to pieces by the explosion.  She bled to death at the scene.  At least 229 persons suffered severe personal injuries as a result of the bomb explosion.  (Complaint ¶11).

Both before and after the terrorist bomb attack on the LaBelle Discotheque, the telex communications between the Libyan intelligence service switchboard in Tripoli and the Libyan embassy in East Berlin record that the officials, employees and agents of Libya, MFIS, JSO and ESO were responsible for the planning, preparation and execution of this terrorist act.  (Complaint ¶12).  Immediately after this terrorist bomb attack, the Libyan embassy in East Berlin sent a message to the Libyan government stating that the execution of this terrorist act had been carried out successfully.  (Complaint ¶12).  The communication stated that "at 1:30 early this morning the performance of one of the actions took place with success, without leaving behind any clues . . . . "  (Complaint ¶12).

---

[4] The estate of Ms. Haney is not a party to this action.  On September 3, 2004, Libya entered into an agreement that settled the personal injury and property claims of all European nationals killed, injured, or otherwise damaged by the LaBelle Discotheque bombing. European nationals killed, injured, or otherwise damaged by the LaBelle Discotheque bombing.

In April 1986 Major General John H. Mitchell was the United States Commander in Berlin.  (Complaint ¶13).  He received secret national defense information from reliable sources.  (Complaint ¶13).  He learned that before the LaBelle bomb attack, instructions had been sent from the Libyan government in Tripoli to the Libyan People's Office in East Berlin to perform terrorist attacks against Americans and that the Libyan People's Office in East Berlin communicated to the Libyan government in Tripoli immediately after the bomb attack that the operation had been successfully performed.  (Complaint ¶13).

On September 10, 1996, Eter visited the German embassy in Malta.  During questioning in the presence of the German ambassador, Eter made a detailed confession by disclosing the planning, preparation and execution of the terrorist attack on La Belle; his own actions; and the actions of the other perpetrators, as set forth above.  (Complaint ¶14). During further questioning conducted by the senior state prosecutor in Berlin, Eter described in detail the execution of the LaBelle terrorist act by officials, employees and agents of Libya, MFIS, JSO and ESO.  (Complaint ¶14).

On March 17, 2001, al-Qadhafi, in a secret meeting in Tripoli, Libya, admitted to Mr. Steiner, the foreign policy adviser to German Federal Chancellor Schroeder that Libya and he (Al-Ghaddafi) participated in the terrorist bomb attack at the LaBelle Discotheque as well as the "Lockerbie" terrorist act.  (Complaint ¶15).  On March 29, 2001, at a meeting in Washington, D.C. between the leaders of Germany and the United States, Mr. Steiner reported to President George W. Bush, Secretary of State Colin Powell, and National Security Advisor Condoleezza Rice these admissions of al-Qadhafi.  (Complaint ¶15).

## SUMMARY OF ARGUMENT

Libya's arguments have already been denied by either the D.C. Circuit or this Court in its Orders of November 12, 2003 and March 31, 2007 in Beecham v. Socialist People's

Libyan Arab Jamahiriya, 01-cv-02243 (RWR), on the same set of facts and opposed by the same legal arguments by the same defendants here as in Beecham.[5]  Libya apparently believes it will be able to force this Court to render inconsistent decisions on identical questions of law based on identical pleading allegations raised in four pending, related cases.[6]

        Libya's Motion to Dismiss entirely consists of a number of arguments that have already been rejected by the D.C. Circuit or this Court.  Libya's first argument, "Libya's Removal from the State Department List", (Mot. to Dismiss at p. 4-7), has been rejected by the D.C. Circuit three times, including two rejections of Libya's same argument on a motion for summary affirmance.[7]  A motion for summary affirmance will only be granted where "the merits of the case are so clear that expedited action is justified," and "no benefit will be gained from further briefing and argument of the issues presented."  Taxpayers Watchdog, Inc. v. Stanley, 819 F.2d 294, 297-98 (D.C. Cir. 1987) (per curiam); Kilburn v. Islamic Republic of Iran, 2006 U.S. App. LEXIS 26051 (D.C. Cir. October 19, 2006).  Thus the D.C. Circuit has twice certified the futility of Libya's argument that the removal of Libya from the State Department's State Sponsor of Terrorism List in 2006 would affect this Court's jurisdiction.

---

[5] With the exception of the two arguments made by Libya regarding the lack of a cause of action or damages available against the foreign state or its agencies.  (See Section V.-VI.A., infra).

[6] Beecham v. Socialist People's Libyan Arab Jamahiriya, 01-cv-02243 (RWR) consolidated with Beecham v. Socialist People's Libyan Arab Jamahiriya, 02-cv-0639 (RWR), Clay v. Socialist People's Libyan Arab Jamahiriya, 06-707 (RWR); Harris v. Socialist People's Libyan Arab Jamahiriya, 06-732 (RWR).

[7] "28 U.S.C. § 1605(a)(7). This exception applies only if three additional criteria are also satisfied: the foreign state was designated a 'state sponsor of terrorism' at the time the act occurred; . . ." Kilburn v. Socialist People's Libyan Arab Jamahiriya, 376 F.3d 1123, 1126-1127 (D.C. Cir. 2004); Pugh v. Socialist People's Libyan Arab Jamahiriya, 2007 U.S. App. LEXIS 7830 at *3 (D.C. Cir. 2007) ("Because Libya was designated as a state sponsor of terrorism at the time the alleged acts occurred, it is not entitled to sovereign immunity, even though it was later removed from the list of state sponsors of terrorism."); Kilburn v. Islamic Republic of Iran, 2006 U.S. App. LEXIS 26051 at *2 (D.C. Cir. 2006) ("Because Libya was designated as a state sponsor of terrorism at the time the alleged acts occurred, it is not entitled to sovereign immunity, even though it was later removed from the list of state sponsors of terrorism.").

Libya's second argument, "Court lacks Subject Matter Jurisdiction Under Terrorism Amendment", (Mot. to Dismiss at p. 7-9), is based upon Libya's argument that Plaintiffs haven't provided any documentary evidence with their complaint and Libya's characterization of Plaintiffs' detailed allegations in their complaint as "wild" and "ridiculous". Id. Libya has confused the burden of going forward. Libya filed a 12(b) motion to dismiss, which examines the allegations of the complaint, taken as true. The Court reviewed these same allegations when it reviewed a 12(b)(1) argument against the complaint in one of the four related case pending before this Court, Beecham v. Socialist People's Libyan Arab Jamahiriya, 01-cv-02243 (RWR). The Court in Beecham described the allegations as not as wild or ridiculous but as " . . . dramatically specific, non-conclusory allegations in support of jurisdiction . . .which demonstrate Libya's involvement in the LaBelle bombing and would strip Libya of its foreign sovereign immunity." November 13, 2003 Order, p. 13, Beecham v. Socialist People's Libyan Arab Jamahiriya, ECF docket number 28, 01-cv-02243 (RWR).

Libya concedes its third argument, "Court Lacks Personal Jurisdiction Over Libya", (Mot. to Dismiss at p. 9), has been rejected by the D.C. Circuit. Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82 (D.C. Cir. 2002); Rux v. Republic of Sudan, 2005 U.S. Dist. LEXIS 36575 (E.D. Va. 2005).

Libya's fourth argument, "Punitive Damages Not Available", (Mot. to Dismiss at p. 9-11), and section A. of their fifth argument, "Flatow Amendment Does Not Create a Cause of Action", (Mot. to Dismiss at p. 11-13), are both supported by the D.C. Circuit in Cicippio-Puleo v. Islamic Republic of Iran, 353 F.3d 1024, 1034 (D.C. Cir. 2004), which Plaintiffs believe to be incorrect. The Court however in Beecham v. Socialist People's Libyan Arab Jamahiriya, 01-cv-02243 (RWR) has already agreed with Libya's argument

based upon <u>Cicippio-Puleo v. Islamic Republic of Iran</u> and Plaintiffs will strike the Flatow

Amendment claims from their complaint when the Court requires the filing of a conforming

complaint as it has done in <u>Beecham</u>.

Libya's last argument, "Generic Common Law Claims Do Not Create a Private

Cause of Action Against Libya", (Mot. Dismiss at p. 13-15), is based upon an incorrect

reading of <u>Acree v. Republic of Iraq</u>, 370 F.3d 41, 59 (D.C. Cir. 2004), and has been

rejected by every court that has considered it.  See <u>e.g.</u>, <u>Simpson v. Socialist People's

Libyan Arab Jamahiriya</u>, 362 F. Supp. 2d 168, 182 (D.D.C. 2005) (rejecting Defendants'

argument that a complaint that listed the torts of false imprisonment, intentional and/or

negligent infliction of emotional distress, assault, battery, loss of consortium and solatium,

and loss of prospective inheritance did not state a claim upon which relief could be

granted); <u>Bodoff v. Islamic Republic of Iran</u>, 424 F. Supp. 2d 74, 78 (D.D.C. 2006)

("Courts have not construed the pleading requirements of Federal Rule of Civil Procedure 8

to require a plaintiff to recite specific source(s) of law in a complaint").

Libya's Motion to Dismiss does not present any new arguments for the Court to

review nor does it present any arguments that have not been rejected by the D.C. Circuit or

this Court in <u>Beecham</u>, aside from the Flatow Amendment claims that Plaintiffs sought to

preserve.  Libya's Motion to Dismiss should accordingly be denied.

## <u>ARGUMENT</u>

### I.    <u>STATUTORY FRAMEWORK</u>

The Foreign Sovereign Immunities Act ("FSIA") provides the sole basis for the

exercise of jurisdiction over a foreign state in a United States Court.  <u>Argentine Republic v.

Amerada Hess Shipping Corp.</u>, 488 U.S. 420, 434 (1989).  Under the FSIA, subject matter

jurisdiction and personal jurisdiction over a sovereign defendant are established by (1)

proper service of the foreign state and (2) satisfaction of one of the statutory exceptions to

sovereign immunity. Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 89

(D.C. Cir. 2002). Section 1605 of the FSIA enumerates specific exceptions to sovereign

immunity, including cases "in which money damages are sought against a foreign state for

personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft

sabotage, hostage taking, or the provision of material support or resources (as defined in

section 2339A of title 18) for such an act if such act or provision of material support is

engaged in by an official, employee, or agent of such foreign state while acting within the

scope of his or her office, employment, or agency . . . ." 28 U.S.C. § 1605(a)(7).

For this exception, known as the state-sponsored terrorism exception, to apply, the

foreign state must have been designated as a state-sponsor of terrorism at the time of the act

or as a result of the act. Id. For the purposes of this case, it is relevant to note that the FSIA

adopts the definitions of "torture" and "extrajudicial killing" contained in section 3 of the

Torture Victim Protections Act ("TVPA")[8], and the definition of "material support or

---

[8] The TVPA defines "extrajudicial killing" as "a deliberate killing not authorized by a previous judgment pronounced by a regularly constituted court affording all judicial guarantees . . . ." 28 U.S.C. § 1350.

"Torture" is defined by the TVPA as

> any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering . . . whether physical or mental, is intentionally inflicted on that individual for such purposes as . . . punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind; and
> (2) mental pain or suffering refers to prolonged mental harm caused by or resulting from (A) the intentional infliction or threatened infliction of severe physical pain or suffering; (B) the administration or application, or threatened administration or application, of mind altering substances or other procedures calculated to disrupt profoundly the senses or the personality; (C) the threat of imminent death; or (D) the threat that another individual will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind altering substances or other procedures calculated to disrupt profoundly the senses or personality.

> 28 U.S.C. § 1350 note.

resources" contained in the Antiterrorism Act ("ATA"), 18 U.S.C. § 2339A.[9] <u>See</u> 28

U.S.C. § 1605(e).

Once a foreign sovereign's immunity has been lifted under § 1605 of the FSIA, as

has occurred in this action, § 1606 of that statute provides that "the foreign state shall be

liable in the same manner and to the same extent as a private individual under like

circumstances." 28 U.S.C. § 1606. "Section 1606 acts as a 'pass through' to substantive

causes of actions against private individuals that exist in federal, state or international law."

<u>Price v. Socialist People's Libyan Arab Jamahiriya</u>, 384 F. Supp. 2d 120, 132 (D.D.C.

2005). FSIA cases need only satisfy the liberal notice-pleading standards of Fed. R. Civ. P.

8, and provide Defendants "fair notice of each claim and its basis." <u>Sparrow v. United Air</u>

<u>Lines</u>, 216 F.2d 1111, 1118 (D.C. Cir. 2000), <u>Baker v. Great Socialist People's Libyan</u>

<u>Arab Jamahiriya</u>, 2006 WL 3208662 at *3-5 (D.D.C. 2006), <u>Dammarell v. Islamic Rep. of</u>

<u>Iran</u>, 370 F. Supp.2d 218, 223 (D.D.C. 2005). Therefore, plaintiffs bringing FSIA cases

need only identify the source of law for their FSIA claims, and need not set forth a specific

choice of law determination. <u>Baker</u>, 2006 WL 3208662 at *3-6; <u>Dammarell</u>, 370 F. Supp.

2d at 223.

---

[9] The ATA defines "material support of resources" as

> any property, tangible or intangible, or service, including currency or monetary
> instruments or financial securities, financial services, lodging, training, expert
> advice or assistance, safe houses, false documentation or identification,
> communications equipment, facilities, weapons, lethal substances, explosives,
> personnel (1 or more individuals who may be or include oneself), and
> transportation, except medicine or religious materials.

18 U.S.C. § 2339A(b)(1).

**II.     BASED UPON THE EXPLICIT WORDING OF THE PERTINENT STATUTE, THE DC CIRCUIT HAS REJECTED LIBYA'S ARGUMENT THAT ITS REMOVAL FROM THE STATE DEPARTMENT LIST OF STATE SPONSORS OF TERRROISM AFFECTS THE COURT'S ASSERTION OF SUBJECT MATTER JURISDICTION**

The explicit wording of 28 U.S.C. §1605(a)(7) conclusively rejects Libya's argument that Libya's May 12, 2006 removal from the State Department's list of State-Sponsors of Terrorism Defendants as a result of Presidential Determination No. 2006-14 somehow invalidates any cases subsequently brought against Libya under 28 U.S.C. §1605(a)(7).  (Mot. Dismiss p. 4-7).   28 U.S.C. §1605(a)(7)(A) states an action may not be brought if: " . . . the foreign state was not designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371) <u>at the time the act occurred</u>. . . " (emphasis added).  The dispositive question therefore is whether Libya was properly designated at the time of the particular terrorist attack in question.  Libya was properly designated as a State Sponsor of Terrorism from 1979 until 2006, as Libya admits in its Motion to Dismiss.  (Mot. Dismiss p. 5).  The Presidential Determination referenced by Libya does not waive jurisdiction for cases brought based upon Libyan terrorist attacks that took place while Libya was designated as a State Sponsor of Terrorism or address this issue at all.  (See Exhibit A).

Furthermore, this exact argument by Libya has been rejected by the D.C. Circuit numerous times.  "28 U.S.C. § 1605(a)(7). This exception applies only if three additional criteria are also satisfied: the foreign state was designated a 'state sponsor of terrorism' at the time the act occurred; . . ."  <u>Kilburn v. Socialist People's Libyan Arab Jamahiriya</u>, 376 F.3d 1123, 1126-1127 (D.C. Cir. 2004).   The D.C. Circuit twice rejected this exact argument on a motion for summary affirmance.  <u>Pugh v. Socialist People's Libyan Arab</u>

Jamahiriya, 2007 U.S. App. LEXIS 7830 at *3 (D.C. Cir. 2007) ("Because Libya was

designated as a state sponsor of terrorism at the time the alleged acts occurred, it is not

entitled to sovereign immunity, even though it was later removed from the list of state

sponsors of terrorism."); Kilburn v. Islamic Republic of Iran, 2006 U.S. App. LEXIS 26051

at *2 (D.C. Cir. 2006) ("Because Libya was designated as a state sponsor of terrorism at the

time the alleged acts occurred, it is not entitled to sovereign immunity, even though it was

later removed from the list of sponsors of terrorism.").  A motion for summary

affirmance will only be granted where "the merits of the case are so clear that expedited

action is justified," and "no benefit will be gained from further briefing and argument of the

issues presented."  Taxpayers Watchdog, Inc. v. Stanley, 819 F.2d 294, 297-98 (D.C. Cir.

1987) (per curiam); Kilburn v. Islamic Republic of Iran, 2006 U.S. App. LEXIS 26051

(D.C. Cir. October 19, 2006).  Thus the D.C. Circuit has twice certified the futility of

Libya's argument that the removal of Libya from the State Department's State Sponsor of

Terrorism List in 2006 would affect this Court's jurisdiction.


### III.   THE PLAINTIFFS' ALLEGATIONS IN THIS CASE SATISFY THE REQUIREMENTS OF 28 U.S.C. § 1605(a)(7) AND ALLOW THE COURT TO ASSERT SUBJECT MATTER JURISDICTION OVER THE CASE

Under the FSIA, Libya bears the burden of showing the Plaintiffs' allegations fall

short of the requirements of 28 U.S.C. § 1605(a)(7) to pierce their sovereign immunity,

which would deny the Court subject matter jurisdiction over this case.  "Because sovereign

immunity is in the nature of an affirmative defense, the plaintiff need not prove the absence

of sovereign immunity in the first instance; rather, 'the defendant bears the burden of

proving that the plaintiff's allegations do not bring its case within a statutory exception to

immunity.'"  Owens v. Republic of Sudan, 412 F. Supp. 2d 99, 104 (D.D.C. 2006) (quoting

Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000)

(emphasis added)).  In attempting to prove the inapplicability of any of the statutory exceptions to immunity on a Rule 12(b)(1) motion to dismiss, the defendant "may challenge either the legal sufficiency *or* the factual underpinning of an exception."  Phoenix Consulting, 216 F.3d at 40.  When a defendant challenges the factual basis of the court's jurisdiction, the court "must go beyond the pleadings and resolve any disputed issues of fact" that are relevant to the jurisdictional determination.  Id.

        Plaintiffs filed a complaint in this case matching the amended complaint filed in Beecham v. Socialist People's Libyan Arab Jamahiriya, 01-cv-02243 (RWR) (ECF docket number 43, filed January 19, 2006).  This Court has already concluded Plaintiffs' allegations were legally sufficient to establish subject matter jurisdiction.  In its Memorandum Opinion of November 12, 2003 in Beecham the Court concluded "plaintiffs have set forth sufficiently concrete and non-conclusory allegations in support of removing the cloak of foreign sovereign immunity from the . . . defendants" based upon the same quality and a similar quantity of factual allegations regarding subject matter jurisdiction. Beecham v. Socialist People's Libyan Arab Jamahiriya, 01-cv-02243 (RWR) November 12, 2003 Order p. 2 (ECF docket number 28, filed November 13, 2003).  In reaching this conclusion, the Court in Beecham cited the "dramatically specific, non-conclusory allegations" from the plaintiffs' consolidated complaints.[10]  (November 12, 2003 Order p. 13).

        The Court in Beecham then set forth its conclusion that plaintiffs' allegations were legally sufficient to establish subject matter jurisdiction:

---

[10] The November 12, 2003 opinion cited further details from the amended complaint of the plaintiffs in that case represented by Jacob Stein and Robert Bredhoff of Stein, Mitchell & Mezines, LLP.  Plaintiffs in this case are not represented by those lawyers and did not utilize the allegations pled in the amended complaint filed by Jacob Stein and Robert Bredhoff on behalf of their Beecham clients.  The deletion of the Stein and Bredhoff Beecham allegations does not significantly detract from the weight of the allegations in the Clay complaint.

Jurisdiction under the FSIA is proper here if plaintiffs sufficiently allege and prove that 1) Libya is a sponsor of terrorism; 2) the complainants were United States nationals at the time of the alleged act; 3) arbitration was pursued for acts occurring on Libyan land; and 4) some action of the defendants causing injury, such as "extrajudicial killing," brings the defendants within the ambit of § 1605 (a) (7).

\* \* \* \*

a. Legal Sufficiency of the Allegations

Defendants contest the legal sufficiency of plaintiffs' claims, suggesting that the facts, as pled, do not establish that the deaths and injuries were caused by Libya's acts or that Libya's provision of material resources for an extrajudicial killing caused the injuries or deaths. A challenge to the legal sufficiency of jurisdictional pleadings requires the court to accept a plaintiff's factual allegations and to afford the benefit of any reasonable inferences to the plaintiff. Price, 294 F.3d at 93. [Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 93 (D.C. Cir. 2002).] Therefore, all of plaintiffs' factual claims here - for instance, that Al-Ghaddafi orchestrated the bombing, that Libyan government agents and agencies recruited aid, and that communications occurred between Tripoli and the East Berlin embassy to plan and prepare the attack - are accepted as true. Those facts are sufficient to allege that Libyan government agents were both the direct and proximate cause of the bombings which resulted in deaths and injuries, and were not simply complicit in the actions of others. The causal chain from Al-Ghaddafi to Elamin and Keshlaf[11] to the commissioned recruits to the bombing and injuries is pled sufficiently clearly and specifically to counter defendants' legal challenge.

\* \* \* \*

Plaintiffs have presented dramatically specific, non-conclusory allegations in support of jurisdiction which, unlike the bare conclusions offered in cases in which discovery was denied as futile, would, if proved, demonstrate Libya's involvement in the La Belle bombing and strip Libya of its foreign sovereign immunity. Plaintiffs explicitly name the individuals commissioned by Elamin and Keshlaf to carry out the attack; describe where, when, and how the bomb was planted in the club; specifically quote statements purportedly made by Libyan agents before and immediately after the explosion; suggest that switchboard activity between Tripoli and Libya's East Berlin embassy shows orchestration by Libyan officials; and detail a confession by Al-Ghaddafi, the alleged mastermind behind the attack.

---

[11] While Elamin and Keshlaf are not mentioned in the Clay complaint, it does name the individuals/agents of Libya under the command of Musbah Abulgasem Eter, a member of the Libyan intelligence service, who transported the bomb material, assembled the bomb and then planted it in the LaBelle Discotheque. (Complaint ¶6-10).

(November 12, 2003 Order p. 9-11, 13). Plaintiffs' detailed allegations unquestionably establish the required elements of subject matter jurisdiction pursuant to 28 U.S.C. § 1605(a)(7), as the Court's careful analysis in Beecham shows. (November 12, 2003 Order p. 10-14).

The Court in Beecham has not yet finally ruled on subject matter jurisdiction because of a pending jurisdictional discovery dispute.

Here, however, the Libya has only challenged the legal grounds for applying the FSIA to Plaintiffs' claims. "As plaintiffs have attached no documents, cited only uncorroborated witnesses, and have presented nothing more than mere conclusory llegations in support of their assertions the Court should decline to exercise subject-matter jurisdiction under the FSIA terrorism Amendment and should dismiss plaintiffs' complaint." (Mot Dismiss p. 8). Of course, documents or evidence isn't required at this stage of the litigation.[12] By stating the allegations are conclusory, Libya makes a challenge to the legal sufficiency of the complaint.

Where only the legal basis for the court's jurisdiction is challenged, the standard of review is similar to that of a motion to dismiss for failure to state a claim: the court must "take plaintiff[s'] factual allegations as true and determine whether they bring the case within any of the exceptions to immunity," id., "keeping in mind that the ultimate burden rests on the defendant to persuade the Court that plaintiffs' claims are, as a matter of law, incapable of satisfying any of the FSIA exceptions." Owens, 412 F. Supp. 2d at 104. The Plaintiffs should therefore "receive the benefit of all favorable inferences that can be drawn from the alleged facts." Id. (citing Price v. Socialist People's Libyan Arab Jamahiriya, 294

---

[12] Libya briefly mentions if the Court wanted to take jurisdictional discovery, the Court should only allow Libya to take jurisdictional discovery of the Plaintiffs, which is not how jurisdictional discovery has ever worked in any of these cases.

F.3d 82, 83 (D.C. Cir. 2002) ("[W]here the defendant contests only the legal sufficiency of plaintiff's jurisdictional claims, the standard is similar to that of Rule 12(b)(6), under which dismissal is warranted if no plausible inferences can be drawn from the facts alleged that, if proven, would provide grounds for relief.").  As Plaintiffs' allegations make clear, the Libyan conduct, on its face, falls within the ambit of the state-sponsored terrorism exception, the Court may assert subject matter jurisdiction pursuant to 28 U.S.C. § 1605(a)(7).

## IV.    THE D.C. CIRCUIT HAS CONCLUSIVELY DECIDED THE ISSUE OF PERSONAL JURISDICTION AGAINST LIBYA

The assertion of personal jurisdiction is appropriate here because Plaintiffs' allegations have satisfied the requirements of 28 U.S.C. § 1605(a)(7), and service upon the Defendants has been perfected.  Through 28 U.S.C. § 1330(b), the FSIA delineates the requirements for the assertion of personal jurisdiction by the forum.  "Personal jurisdiction under FSIA exists so long as subject matter jurisdiction exists and service has been properly made pursuant to 28 U.S.C. § 1608."  Foremost McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438 (D.C. Cir. 1990); 28 U.S.C. § 1330(b).  The FSIA subsumes the minimum contacts analysis within its provisions that grant subject matter jurisdiction and allows personal jurisdiction upon a showing of the necessary subject matter jurisdiction facts plus service upon the defendant.  In this case, Plaintiffs' allegations satisfy the requirements of 28 U.S.C. § 1605(a)(7) and service upon the Defendants has been perfected.

Libya has argued in the past that whether personal jurisdiction over a foreign state or its agencies is proper must be governed by the Fifth Amendment.  Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 95 (D.C. Cir. 2002) (describing Libya's personal jurisdiction argument as follows: "[i]mplicit in Libya's argument is the claim that

a foreign state is a "person" within the meaning of the Due Process Clause…").  <u>Price</u>

rejected this argument.  <u>Id.</u> at 96.

In this case, Libya reserved the issue of the "constitutionality of personal

jurisdiction over the state" as adversely decided by "<u>Price I</u>" for further review.  (Mot.

Dismiss p. 9).  Although it's not clear from the Motion to Dismiss, Plaintiffs believe Libya

intends to reserve the right to reargue the specific holding of <u>Price v. Socialist People's</u>

<u>Libyan Arab Jamahiriya</u>, that " . . . foreign states are not 'persons' protected by the Fifth

Amendment."  294 F.3d at 96 (followed by <u>Rux v. Republic of Sudan</u>, 2005 U.S. Dist.

LEXIS 36575 (E.D. Va. 2005)).  <u>Price</u>'s holding of course remains binding precedent in

this case.

The Court may therefore assert personal jurisdiction over Libya.


**V.    FLATOW AMENDMENT DAMAGES**

On March 31, 2007, the Court entered an order striking the Flatow Amendment

claims from the Amended Complaint in <u>Beecham</u>.   <u>Beecham v. Socialist People's Libyan</u>

<u>Arab Jamahiriya</u>, March 31, 2007 Order p. 8, 01-cv-02243 (RWR) (ECF docket number

102, filed March 31, 2007). Plaintiffs in this case will conform their complaint to that

Order.


**VI.    THE COMPLAINT STATES A CAUSE OF ACTION AGAINST LIBYA**

**A.  FLATOW AMENDMENT CAUSE OF ACTION**

On March 31, 2007, the Court entered an order striking the Flatow Amendment

claims from the Amended Complaint in <u>Beecham</u>.   <u>Beecham v. Socialist People's Libyan</u>

<u>Arab Jamahiriya</u>, March 31, 2007 Order p. 8, 01-cv-02243 (RWR) (ECF docket number

102, filed March 31, 2007). Plaintiffs in this case will conform their complaint to that Order.

### B. LIBYA INCORRECTLY INTERPRETS ACREE – PLAINTIFFS HAVE PROPERLY PLED STATE COMMON LAW CAUSES OF ACTION

Libya argues Plaintiffs' causes of action are not well-pled because they do not identify any "state specific causes of action against Libya." (Mot. Dismiss p. 14). Actually Plaintiffs pled causes of action for wrongful death, solatium and intentional infliction of emotional distress and survival damages based on state common law. (Compl. ¶19-27). The sufficiency of Plaintiffs' allegations is governed by Fed. R. Civ. P. 8 and this rule does not require Plaintiffs to plead what state provide the source of law on which the causes of action and damages are based.

The basis for analysis for a rule 12(b)(6) motion is the presence or absence of a claim. "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-6 (1957). Under the standard rules of federal pleading, plaintiffs are not even required to identify the legal theory of relief or to state the causes of action, much less identify the specific state common law cause of action on which they intend to rely. Baker, 2006 WL 3208662 at * 5 (stating that "[n]either the Federal Rules nor case law require Plaintiffs to plead legal theories in their complaint."); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1114-15 (D.C. Cir. 2000) (quoting Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998)) ("In sum, we agree with the conclusion reached by Judge Easterbrook in Bennett: '[b]ecause racial discrimination in employment is a claim upon which relief can be granted, . . . . I was turned down for a job because of my race is all a complaint has to say' to survive a motion to dismiss under Rule

12(b)(6).”); see also Krieger v. Fadely, 211 F.3d 134, 136 (D.C. Cir. 2000).  If Plaintiffs are
not required to name a legal theory of relief, then it is clear that Plaintiffs would not be
required to name the specific source of law for that unnamed legal theory of relief.

        In Bennett, the Seventh Circuit specifically addressed whether a plaintiff was
required to identify a state's common law cause of action.  The court noted that so long as a
complaint puts the defendant on notice of what the plaintiff believes the underlying
wrongdoing to be, “the complaint need not offer specifics about which rules of law, state or
federal,” the wrongdoing offends.  Bennett, 153 F.3d at 519.  The Bennett court held,

>       They [defendants] observe that the complaint seeks relief
>       under state as well as federal law but that it does not identify
>       any 'state causes of action.'  This is a defect, however, only if
>       a complaint must identify legal theories. It need not. This is
>       the difference between notice pleading and code pleading;
>       abandonment of code pleading is the fundamental choice
>       behind Rule 8, the reason why it does not contain the phrase
>       'cause of action,' a term of art in code-pleading days.

Bennett, 153 F.3d 516, 518 (7th Cir. 1998) (emphasis added).  This Circuit has adopted the
Bennett court's rationale that “[c]omplaints need not plead law or match facts to every
element of a legal theory.”  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1115 (D.C.
Cir. 2000); Krieger, 211 F.3d at 136.

        Accordingly, it remains the law of this Circuit that so long as the “gist of the
complaint is clear, and where the facts set forth the legal claim such that the parties are not
prejudiced, the complaint should be read broadly . . . .”  Arakelian v. National Western Life
Ins., 755 F. Supp. 1080, 1085 (D.D.C. 1990); see also Hanson v. Hoffman, 628 F.2d 42, 53
(D.C. Cir. 1980).

        Other circuits explicitly agree with this interpretation of the “notice pleading” for the
federal rules of pleading.  “The function of a complaint under the Federal Rules is to give
the defendant fair notice of plaintiff's claim and the grounds upon which plaintiff relies.

Thus, the fact that a plaintiff pleads an improper legal theory does not preclude recovery under the proper theory." Doss v. South Cent. Bell Telephone Co., 834 F.2d 421, 424 (5th Cir. 1987) (internal citations omitted) (citing Oglala Sioux Tribe of Indians v. Andrus, 603 F.2d 707 (8th Cir. 1979)); Gwartz v. Jefferson Memorial Hosp. Ass'n., 23 F.3d 1426, 1431 (8th Cir. 1994) (explaining that a court should re-characterize a plaintiff's legal theory of the case in light of the factual allegations in order to save the complaint from a motion 12(b)(6)).

Libya argues the decision in Acree v. Republic of Iraq, 370 F.3d 41 (D.C. Cir. 2004) requires the Court to ignore this general rule of notice pleading and apply a heightened standard of pleading for FSIA cases. This, however, would require Plaintiffs to identify the specific states' common law that they would apply. This argument has also been rejected numerous times in this Circuit. In an abundance of caution, however, the Plaintiffs will address this argument in turn. See e.g., Baker, 2006 WL 3208662 at *5; Simpson, 362 F. Supp. 2d at 183 (rejecting the Acree argument raised by the same defendants as in this case, and stating that "[t]he court does not read Acree v. Iraq to have modified the threshold for surviving a Rule 12(b)(6) motion to dismiss.") (internal citation omitted).

The Acree court wrote that "generic common law" cannot furnish a federal cause of action. Id. at 59. In stark contrast to the stage that this Court finds itself in this litigation, the Acree court made its ruling upon a motion to intervene filed by the United States after the culmination of the trial in the district court below. Plaintiffs in Acree had advanced far beyond the rule 12(b)(6) stage and their continuing failure to identify specific state common law causes of action meant something entirely different than a failure to identify specific state common law causes of action in a complaint.

The facts of <u>Acree</u> quickly establish its complete lack of precedential value to the question at issue.  In <u>Acree</u>, the Plaintiffs "pointed to no source of liability other than § 1605(a)(7) and the Flatow Amendment . . . ."  370 F.3d at 59.  Indeed, the <u>Acree</u> Court held that the plaintiffs in that case failed to properly state a cause of action because they merely "allude[d] to the 'traditional torts of assault, battery and intentional infliction of emotional distress' in their generic form, Compl. ¶ 597, J.A. 143, they did not point to any other specific source in state, federal, or foreign law for their cause of action."  <u>Acree</u>, 370 F.3d at 59.

In this case, however, the Plaintiffs have specifically identified in each count whether they are relying on state common law, state statutory law and/or federal law for each particular cause of action.  Furthermore, the <u>Acree</u> Court did not raise the standard of "what is required of Plaintiffs by notice pleading", nor does it raise the bar for surviving a motion to dismiss for failure to state a claim.  <u>Hartford Ins. v. Socialist People's Libyan Arab Jamahiriya</u>, 422 F. Supp. 2d 203, 209 (D.D.C. 2006); <u>see also</u> <u>Baker</u>, 2006 WL 3208662 at  *4 (holding that "[n]either <u>Acree</u> nor <u>Cicippio-Puelo</u> [<i>sic</i>] imposed a heightened pleading requirement nor altered Plaintiffs' pleading burden"); <u>Simpson v. Socialist People's Libyan Arab Jamahiriya</u>, 362 F.Supp.2d 168, 183 n. 13 (D.D.C. 2005); <u>Wyatt v. Syrian Arab Republic</u>, 362 F. Supp. 2d 103, 117 n.5 (D.D.C. 2005) (stating that the <u>Acree</u> holding did not change the standard for a 12(b)(6) motion to dismiss, and directing the Plaintiffs, who failed to plead any sort of law upon which they relied, to submit a choice-of-law statement for purposes of "efficacy").

Moreover, the Plaintiffs did in fact identify specific state common law causes of action, being: (a) intentional infliction of emotional distress; (b) solatium; (c) wrongful death; (d) survival damages; (e) economic damages; and (d) punitive damages.  (Compl.

¶19-27).  Furthermore, the allegations contained in the Complaint support liability for Libya under both a conspiracy and aiding and abetting theory.  The Plaintiffs have never manifested intent to rely on "generic common law" and expressly identified in their Complaint that each cause of action is grounded in state common law, statutory law and/or the Flatow Amendment.  Plaintiffs have met their burden to put the Defendants on notice as to the nature and extent of the Plaintiffs' causes of action, and accordingly, the Defendants' Motion to Dismiss on 12(b)(6) grounds must be denied.

Libya's reliance on a quote from Acree, which was taken out-of-context, has proven to be misplaced before.  Courts in this Circuit have uniformly ruled that Acree does not say what Defendants hope it says. "The court does not read Acree v. Iraq to have modified the threshold for surviving a Rule 12(b)(6) motion to dismiss."  Simpson v. Socialist People's Libyan Arab Jamahiriya, 362 F. Supp. 2d 168, 183 (D.D.C. 2005) (citation omitted) (rejecting the same Acree argument as raised by the same defendants in this case).

In this case, however, the Plaintiffs have specifically identified in each count whether they are relying on state law or federal law for each particular cause of action.

Furthermore, the Acree Court did not raise the standard of notice-pleading as Libya suggest.  "The Court agrees with Plaintiffs that Acree does not increase what is required of Plaintiffs by notice pleading, nor does it raise the bar for surviving a motion to dismiss for failure to state a claim."  Hartford Ins. v. Socialist People's Libyan, 422 F. Supp. 2d 203, 209 (D.D.C. 2006); Baker v. Great Socialist People's Libyan Arab Jamahiriya, 2006 U.S. Dist. LEXIS 83095 at *14 (D.D.C. 2006) (finding "[g]iven the Supreme Court's decision in Swierkiewicz, the Court of Appeals could not have required more detailed complaints in FSIA cases than Rule 8 otherwise permits."); Simpson v. Socialist People's Libyan Arab Jamahiriya, 362 F. Supp. 2d 168, 183 n. 13 (D.D.C. 2005); Wyatt v. Syrian Arab Republic,

362 F. Supp. 2d 103, 117 n.5 (D.D.C. 2005) (stating that the <u>Acree</u> holding did not change the standard for a 12(b)(6) motion to dismiss).

Furthermore, the Court has already effectively ruled that the allegations contained in Plaintiffs' complaint state a cause of action.   Plaintiffs in this case filed a complaint that matches the factual allegations in the amended complaint filed in <u>Beecham v. Socialist People's Libyan Arab Jamahiriya</u>, 01-cv-02243 (RWR) (ECF docket number 43, filed January 19, 2006).  The causes of action in this case are pled in the same style as those pled in the <u>Beecham</u> amended complaint.  This Court therefore has already concluded Plaintiffs' allegations were legally sufficient to state cognizable causes of action.  In its Memorandum Opinion of March 31, 2007 the Court in <u>Beecham</u> concluded "where plaintiff specifically alleges a 'coherent alternative' to his generic common law claims, his complaint should not be dismissed with prejudice to state a claim."  <u>Beecham v. Socialist People's Libyan Arab Jamahiriya</u>, 01-cv-02243 (RWR) March 31, 2007 Order p. 6 (ECF docket number 102, filed March 31, 2007).  The Court's conclusion was based upon the same style of pleading as found in this complaint.

### VII.   <u>THE JOHN DOE CLAIMS</u>

The only issue remaining is the remaining John Doe plaintiffs.  The criminal investigation division of the US Army ("CID") has furnished us with their list of the names, ranks, and serial numbers of the US victims hospitalized as a result of the LaBelle bombing, compiled on the night of the event.  This list has been furnished to counsel for Libya.  In the fog of that event the data may have been inputted incorrectly – some names don't match some of the social security numbers – and these John Does haven't been located.  The question then remains what is to be done to preserve their claims and the US State Department has agreed to take this up with the Libyan government on a government-to-

government basis.[13]  If a settlement is achieved, the US Army has agreed to attempt to locate these individuals through the use of Army medical records.  There seems to be a general consensus among the relevant actors in US government that if there is to be a negotiated settlement as a result of the intercession of the US government in the ongoing talks, an effort should be made to locate these individuals.   The John Doe claims should not be dismissed while they are the subject of government-to-government negotiations.

## CONCLUSION

Each issue of law raised by Libya here as has already been address by either the D.C. Circuit of the Court in Beecham in its Orders of November 12, 2003 and March 31, 2007.  Libya has not presented any new arguments and offers nothing new for the Court to examine.

Dated:  June ____, 2007                    Respectfully submitted,

                                           **/s/ Steven R. Perles_____**
                                           Steven R. Perles
                                           Perles Law Firm, PC
                                           1146 19th Street, NW, Fifth Floor
                                           Washington, DC  20036
                                           Telephone:  202-955-9055
                                           Telefax:  202-955-3806

                                           Counsel for Plaintiffs

---

[13] Neither this Court nor the State Department is foreign to this type of provision.  A provision such as this was used to protect the claims of then-as-yet unidentified claimants in Princz v. Federal Republic of Germany, (CV92-644 )(SS).  The provision allowed the unidentified to be identified and come forward within a fixed period of time or be forever time-barred.  There over 200 claimants were located and compensated, here there are less than a dozen possible claimants.