UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DARYAL V. CLAY, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | 1:06-cv-00707-RWR |
| ) | |
| SOCIALIST PEOPLE'S LIBYAN ARAB ) | |
| JAMAHIRIYA, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

**LIBYAN STATE DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Defendants Socialist People's Libyan Arab Jamahiriya and Jamahiriya Security Organization (collectively the "Libyan State Defendants") respectfully move this Court for an order dismissing with prejudice Plaintiffs' Amended Complaint in its entirety pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction.

In support of its motion, the Libyan State Defendants respectfully submit the accompanying memorandum of points and authorities.

Dated: April 11, 2008

Respectfully submitted,

**WHITE & CASE**LLP

/ s / Christopher M. Curran
Christopher M. Curran (D.C. Bar No. 408561)
Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Nicole E. Erb (D.C. Bar No. 466620)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Counsel for Defendants Socialist People's Libyan Arab Jamahiriya and Jamahiriya Security Organization*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DARYAL V. CLAY, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) 1:06-cv-00707-RWR |
| | ) |
| SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

### THE LIBYAN STATE DEFENDANTS' MEMORANDUM IN
### SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

**WHITE & CASE** LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Tel.:  (202) 626-3600
Fax:  (202) 639-9355

*Counsel for the Socialist People's Libyan Arab Jamahiriya and the Jamahiriya Security Organization*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

ARGUMENT ...........................................................................................................................1

I.   THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER
     PLAINTIFFS' CLAIMS ...............................................................................................1

     A.   Plaintiffs' Prior Action Does Not Satisfy The Limited Criteria Established
          By Congress To Bring That Action Within The Scope Of The FSIA
          Amendments ......................................................................................................1

     B.   The Court Lacks Subject-Matter Jurisdiction Because Plaintiffs' Claims
          Do Not Fall Within The Scope Of Section 1605A .............................................4

II.  THE CLAIMS ASSERTED ON BEHALF OF UNIDENTIFIED
     CLAIMANTS FAIL .....................................................................................................8

     A.   Rule 17 Bars Plaintiff Clay From Asserting Claims On Behalf Of
          Unidentified Potential Plaintiffs .........................................................................8

     B.   Plaintiffs May Not Bring The Claim Of The Unidentified Potential
          Plaintiffs As A Class Action ...............................................................................9

CONCLUSION ......................................................................................................................10

## **TABLE OF AUTHORITIES**

**CASES**                                                                                                                                    **Page**

*Campuzano v. Islamic Republic of Iran*,
   281 F. Supp. 2d 258 (D.D.C. 2003) ............................................................................... 7, 8

*Cicippio-Puleo v. Islamic Republic of Iran*,
   353 F.3d 1024 (D.C. Cir. 2004) ..................................................................................... 3, 8

*Dammarell v. Islamic Republic of Iran*,
   Civ. A. No. 012224, 2005 WL 756090 (D.D.C. March 29, 2005) ................................. 7

*Elahi v. Islamic Republic of Iran*,
   124 F. Supp. 2d 97 (D.D.C. 2000) ................................................................................. 8

*Estate of Buonocore v. Great Socialist People's Libyan Arab Jamahiriya*,
   Civ. A. No. 06-727, 2007 WL 2007509 (D.D.C. July 9, 2007) ..................................... 2, 8

*Fernandez-Vargas v. Ashcroft*,
   548 U.S. 30 (2006) ........................................................................................................ 3

*In re American Med. Sys.*,
   75 F.3d 1069 (6th Cir. 1996) ......................................................................................... 10

*I.N.S. v. St. Cyr,*
   533 U.S. 289 ................................................................................................................. 4

*John R. Sand & Gravel v. United States*,
   128 S. Ct. 750 (2008) .................................................................................................... 3

*Keene Corp. v. United States*,
   508 U.S. 200 (1993) ...................................................................................................... 5, 6

*Lans v. Gateway 2000, Inc.*,
   84 F. Supp. 2d 112 (D.D.C. 1999) ................................................................................. 10

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994) ...................................................................................................... 3

*Lindh v. Murphy*,
   521 U.S. 320 (2007) ...................................................................................................... 3

*Legal Servs. Corp. v. Velazquez*,
   531 U.S. 533 (2001) ...................................................................................................... 9

*Peterson v. Islamic Republic of Iran*,
   264 F. Supp. 2d (D.D.C. 2003) ..................................................................................... 7, 8

## TABLE OF AUTHORITIES

**CASES** **Page**

*Sinochem Int'l Co. Ltd v. Malaysia Int'l Shipping Corp.*,
  127 S. Ct. 1184 (2007)..................................................................................................4

*Stambaugh v. Kansas Dep't of Corr.*,
  151 F.R.D. 664 (D. Kan. 1993)....................................................................................10

*Steel Co. v. Citizens for Better Env't*,
  523 U.S. 83 (1998).........................................................................................................4

*Vine v. Republic of Iraq*,
  459 F. Supp. 2d 10 (D.D.C. 2006)..................................................................................2

*Weathers v. Peters Realty Corp.*,
  499 F.2d 1197 (6th Cir. 1974) .....................................................................................10

**FEDERAL STATUTES**

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602-1611 (2008) ......................... *passim*

National Defense Authorization Act of 2008, Pub. L. No. 110-181 ..............................................2

28 U.S.C. § 1605A(a)(7) (repealed 2008).............................................................................. *passim*

Fed. R. Civ. P. 17.............................................................................................................................9

## TABLE OF AUTHORITIES

**Page**

**LEGISLATIVE MATERIALS**

H.R. REP. No. 102-367 (1991) .............................................................................................. 9

S. 825, 103rd Cong. (1993) ................................................................................................... 7

*Comprehensive Antiterrorism Act of 1995;*
*Report of the Committee on the Judiciary*, H.R. REP. No. 104-383 (1995) ....................... 6

Geneva Convention for the Amelioration of the Condition of the Wounded and Sick in
Armed Forces in the Field, art. 3, Aug. 12, 1949, 6 U.S.T. 3114, 75 U.N.T.S. 31 ............... 9

The Socialist People's Libyan Arab Jamahiriya and the Jamahiriya Security Organization (the "Libyan State Defendants") respectfully submit this memorandum in support of their motion to dismiss the Amended Complaint.

## INTRODUCTION

The Amended Complaint alleges an act of terrorism ― specifically a bombing at a crowded nightclub in Germany ― resulting in personal injuries to the two Plaintiffs, Daryal V. Clay and William Douglas Johnson, as well as to unspecified other John and Jane Does. Amended Complaint ("Am. Compl.") ¶ 4, filed March 3, 2008 (Docket No. 33). As the basis for subject-matter jurisdiction, the Amended Complaint relies exclusively upon the newly enacted 28 U.S.C. § 1605A. Because § 1605A does not establish subject-matter jurisdiction over the claims asserted in the Amended Complaint, this action must be dismissed.

## ARGUMENT

### I. THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS

#### A. Plaintiffs' Prior Action Does Not Satisfy The Limited Criteria Established By Congress To Bring That Action Within The Scope Of The FSIA Amendments

This action was untimely when filed. On the face of both the original Complaint and the new Amended Complaint, Plaintiffs' claims arose on April 5, 1986. This action was not commenced until over twenty years later, on April 19, 2006.

When this action was filed, subject-matter jurisdiction rested exclusively upon 28 U.S.C. § 1605(a)(7), and 28 U.S.C. § 1605(f) set forth a specific limitations period for actions brought under § 1605(a)(7):

> No action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period.

28 U.S.C. § 1605(f).

Plaintiffs' action plainly was not within 10 years of when the cause of action arose. Nor were Plaintiffs' claims saved through principles of equitable tolling, as this Court has specifically held that equitable tolling under § 1605(f) "does not bring about an automatic extension of the statute of limitations by the length of the tolling period. Instead, the doctrine provides extra time to a plaintiff only if it is needed, and only for a reasonable period." *Estate of Buonocore v. Great Socialist People's Libyan Arab Jamahiriya*, No. 06-727 (GK), 2007 WL 2007509, at *2 (D.D.C. July 9, 2007) (internal quotation omitted) (dismissing action filed in 2006 as untimely under § 1605(f) where cause of action arose in 1985); *Vine v. Republic of Iraq*, 459 F. Supp. 2d 10, 28 (D.D.C. 2006) (dismissing action filed in 2001 as untimely under § 1605(f) where cause of action arose in 1990, at the latest). The untimeliness made § 1605(a)(7) unavailable and left Plaintiffs' action without a basis for subject-matter jurisdiction.

Plaintiffs invoke the newly enacted § 1605A, as though that provision can transform their jurisdictionally deficient action into a viable one. But newly enacted § 1605A does not apply to Plaintiffs' action.

Section 1605A was created by Section 1083 of the National Defense Authorization Act of 2008, Pub. L. No. 110-181 (the "Defense Act"), which amended the FSIA in certain respects. A copy of Section 1083 of the Defense Act is attached hereto as Exhibit A. Among other things, § 1605A creates a new cause of action for certain types of terrorism-related claims against foreign states, and repeals former § 1605(a)(7) and § 1605(f). *See* 28 U.S.C. § 1605A(c) and

2

§ 1083(b). Section 1083(c), "Application to Pending Cases," allows for retroactive application of § 1605A(c) only if the express statutory criteria set forth in Section 1083(c)(2)(A) are satisfied. *Compare with Lindh v. Murphy*, 521 U.S. 320, 329 n.4 (identifying the following as an example of a statement that might qualify as sufficiently clear to have retroactive effect: "[This Act] shall apply to all proceedings pending on or commenced after the date of enactment of this Act") (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 260 (1994)); *Fernandez-Vargas v. Ashcroft*, 126 S. Ct. 2422, 2428 (2006) (explaining that courts apply the presumption against retroactivity by construing a statute as inapplicable to a past act "absent a clear indication from Congress that it intended such a result") (citation omitted).

Section 1083(c)(2)(A), relating to "prior actions," allows retroactive application of § 1605A(c), only if, among other things, they were "adversely affected" by the lack of a federal cause of action against the state under § 1605(a)(7) or the Flatow Amendment. Contrary to Plaintiffs' apparent belief, Section 1083(c)(2) does *not* revive cases that had jurisdictional defects.

Because § 1605(a)(7) was "merely a jurisdiction conferring provision that does not otherwise provide a cause of action," *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1032 (D.C. Cir. 2004), an action that does not satisfy all requirements set forth in § 1605(a)(7) lacks subject-matter jurisdiction. Those requirements include the timeliness requirements of former § 1605(f) tied to § 1605(a)(7). *See John R. Sand & Gravel v. United States*, 128 S. Ct. 750, 753 (2008) (describing a statute of limitations "limiting the scope of a governmental waiver of sovereign immunity" as "jurisdictional") (citations omitted).

Plaintiffs' action did not meet the threshold jurisdictional requirements of § 1605(a)(7) and, thus, could not have been "adversely affected" on the grounds that § 1605(a)(7) or the

3

Flatow Amendment failed to create a cause of action against the state; the Court would not have been permitted to hear any causes of action. *See* Section 1083(c)(2)(A)(iii); *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1191 (2007) ("Without jurisdiction the court cannot proceed at all in any cause; it may not assume jurisdiction for the purpose of deciding the merits of the case." (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83 (1998))). Under the plain language of Section 1083(c)(2)(A), Plaintiffs therefore cannot retroactively bring their claims under § 1605A. *See also In re ADC Telecommc'ns, Inc. Sec. Litig.*, 331 F. Supp. 2d 799, 802-03 (D. Minn. 2004) (requiring under the presumption against retroactivity a statute to be "so clear that it could sustain only one interpretation" before allowing a statute "to apply retroactively or to revive previously time-barred claims") (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 317 (2001) (other citations omitted)).

    **B.**    **The Court Lacks Subject-Matter Jurisdiction Because Plaintiffs' Claims Do Not Fall Within The Scope Of Section 1605A**

Section 1605A withdraws FSIA immunity in cases "in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act . . . ." 28 U.S.C. § 1605A(a)(1). Even if Section 1605A were somehow retroactively applicable to Plaintiffs' action, the provision would not withdraw the Libyan State Defendants' immunity as to Plaintiffs' claims.

The Amended Complaint, which seeks damages strictly for "personal injuries," alleges that actions performed by agents, employees and officials of the Libyan State Defendants "constitute[] attempted extra-judicial killing, 'torture' and the provision of 'material support or resources' for the aforementioned, as required by 28 U.S.C. § 1605A." Am. Compl. ¶ 16 (footnote omitted). Plaintiffs' effort to fit their claims within Section 1605A must fail.

4

First, Section 1605A does not encompass claims of personal injury caused by "*attempted* extrajudicial killing." Am. Compl. ¶ 16 (emphasis added). Congress no doubt could have chosen to extend Section 1605A's coverage to that extent, but it chose not to do so. Congress extended jurisdiction only to actual instances of "extrajudicial killing." In order to fit their case within the statute, Plaintiffs explicitly recognize that the Court must force the word "attempted" into the statutory provision. This goes against basic principles of statutory construction. *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (holding that courts have a "duty to refrain from reading a phrase into the statute when Congress has left it out").

Second, the Amended Complaint does not allege an act of "torture" as that term is employed in § 1605A. Section 1605A defines torture as that term is used in Section 3 of the TVPA:

> [A]ny act, *directed against an individual in the offender's custody or physical control*, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind.

28 U.S.C. § 1350 note (emphasis added). Plaintiffs plead no facts alleging that they were in the "custody or physical control" of the individuals alleged to have carried out the bombing; indeed, the allegations of the Amended Complaint foreclose this possibility. *See* Am. Compl. at ¶ 3 ("At the precise time of the events hereinafter described which gave rise to this litigation . . . all were off duty and were in attendance at the LaBelle discotheque . . . .").

Furthermore, the Amended Complaint's reliance upon the alleged "provision of material support or resources" cannot apply because under Section 1605A the provision of material support or resources must be in the furtherance of one of the predicate acts enumerated in the

5

statute. 28 U.S.C § 1605A(a)(1) ("or the provision of material support or resources for such an act . . . ."). In the absence of a predicate act — such as an "extra-judicial killing" or "torture"— there cannot be prohibited provision of material support or resources.

At bottom, the Amended Complaint alleges "personal injuries," but it does not adequately allege personal injuries "caused by" one of the specified predicate acts — i.e., "extrajudicial killing" or "torture." Plaintiffs' claims are for personal injuries caused by a terrorist attack, but Congress did not provide subject-matter jurisdiction generally for personal injuries caused by any terrorist act. Congress could have done so, but chose instead in Section 1605A to provide subject-matter jurisdiction for personal injuries caused by certain specified — and carefully defined — acts.

Section 1605A is based on the language of former § 1605(a)(7), and the legislative history of the former § 1605(a)(7) confirms Congressional intent in prior versions of the bill to limit the predicate acts conferring subject-matter jurisdiction to those specifically enumerated in the statute. *See Comprehensive Antiterrorism Act of 1995*: *Report of the Committee on the Judiciary*, H.R. REP. NO. 104-383 at 41 (1995) ("Section 804 would amend the Foreign Sovereign Immunities Act so as to grant federal court jurisdiction over cases brought by U.S. citizens seeking damages against a foreign state for certain acts. Specifically, it would authorize suits alleging *extrajudicial killing, torture, aircraft sabotage, or hostage-taking* undertaken by, or on behalf of, a foreign government.") (emphasis added). Congress could have provided jurisdiction over all claims for personal injury arising from terrorist attacks. Indeed, an earlier Senate bill would have provided subject-matter jurisdiction over claims for personal injuries caused by "acts of international terrorism," which was defined broadly as:

6

> An act (1) which is violent or dangerous to human life and that is a violation of the criminal laws of the United States or of any State or that would be a criminal violation if committed within the jurisdiction of the United States or any State; and (2) which appears to be intended – (A) to intimidate or coerce a civilian population; (B) to influence the policy of a government by intimidation or coercion; or (C) to affect the conduct of a government by assassination or kidnapping.

S. 825, 103rd Cong. (as introduced by S. Comm. on the Judiciary, April 27, 1993). Congress ultimately did not adopt the Senate's proposed broad grant of subject-matter jurisdiction and instead enacted a different bill with limited subject-matter jurisdiction that excludes Plaintiffs' claims.

Nor can subject-matter jurisdiction rest upon the Amended Complaint's allegations that people other than the Plaintiffs here were killed. Am. Compl. ¶ 4. Plaintiffs' personal injuries were not caused by the "extrajudicial killing" of others. Plaintiffs' personal injuries were caused by the explosion described in the Amended Complaint. Plaintiffs would have sustained the same injuries whether or not others had been killed in the explosion. It would be most peculiar if the viability of Plaintiffs' suit turned on the fact that one or more others were killed in the same explosion; there is no indication that Congress intended this peculiar interpretation of § 1605A or former § 1605(a)(7). Stated differently, Plaintiffs cannot invoke § 1605A simply because others were killed in the explosion that injured them.

In uncontested default proceedings, this Court has previously concluded that similar language of former Section 1605(a)(7) provided subject-matter jurisdiction over claims for personal injuries in circumstances where others were killed. *See, e.g., Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258, 269-70 (D.D.C. 2003); *Dammarell v. Islamic Republic of Iran*, 281 F. Supp. 2d 105, 198, n.20 (D.D.C. 2003); *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46, 61 (D.D.C. 2003). These decisions should not be given meaningful precedential value. *See Estate of Buonocore v. Great Socialist People's Libyan Arab Jamahiriya*, Civ. A. No.

06-727, 2007 WL 2007509, at *2 (D.D.C. July 9, 2007) (discounting persuasive value of precedents where issue was never fully litigated due to default); *see also Ciccipio-Puelo v. Islamic Republic of Iran*, 353 F.3d 1024 (D.C. Cir. 2004) (finding no claim under § 1605(a)(7) where three district court decisions found otherwise in default proceedings). In addition to not having any advocates on behalf of the foreign state in these cases, the Court in these default proceedings did not engage in rigorous analysis or consult the legislative history of § 1605(a)(7). Interestingly, in the sole case in which this Court considered this question in any depth at ─ *Dammarell* ─ the Court acknowledged: "There may be some question whether plaintiffs who were survivors of the bombing may seek recourse under the FSIA's exception to sovereign immunity in the case of 'extrajudicial killing.'" 281 F. Supp. 2d at 198, n.20.

To read § 1605A(a) as providing subject-matter jurisdiction for personal injuries caused by "extrajudicial killing" would create an absurd situation where an injured person's ability to bring a claim turned on the happenstance of whether others were killed.

Moreover, contrary to the assumptions in the above default proceedings, it is not at all clear that the definition of "extrajudicial killing" found in § 1605A was intended to include terrorist acts against groups of people, such as the attack alleged here. The language of § 1605A comes from § 1605(a)(7), the legislative history of which demonstrates that Congress was focused on targeted summary executions carried out without the procedural safeguards of a court during its deliberations. *See The Foreign Sovereign Immunities Act: Hearing on S. 825 Before the Subcomm. on Courts and Administrative Practice of the S. Comm. on the Judiciary*, 103rd Cong. 1077 (1994) (statement of Rep. Mazzoli) ("H.R. 934 would add a new exception to the FSIA which would allow U.S. citizens who are subjected to torture, extrajudicial killing, *summary execution as it is called*, or genocide abroad by a foreign sovereign to bring suit against

8

the foreign sovereign . . . .") (emphasis added); H.R. REP. NO. 103-702 at 4 (1994) ("[A] foreign sovereign violates international law if it practices torture, *summary execution*, or genocide.") (emphasis added).

The term "extrajudicial killing" as used in § 1605(a)(7) was borrowed from the TVPA, which expressly based the definition of the term on Common Article 3 of the Geneva Conventions. Common Article 3 provides among other acts prohibited by the Conventions: "the passing of sentences and the carrying out of executions without previous judgment pronounced by a regularly constituted court, affording all the judicial guarantees which are recognized as indispensable by civilized people." *See* H.R. REP. NO. 102-367(I) at 87 (1991) ("The concept of "extrajudicial killings" is derived from article 3 common to the four Geneva Conventions of 1949"); Geneva Convention for the Amelioration of the Condition of the Wounded and Sick in Armed Forces in the Field, art. 3, Aug. 12, 1949, 6 U.S.T. 3114, 75 U.N.T.S. 31. The express incorporation into the TVPA and the FSIA of these principles proscribing executions carried out without legal process illustrates Congressional intent to narrowly define the acts covered by the term "extrajudicial killing" in § 1605A as summary killings occurring without due process of law. Thus, it is not apparent that Plaintiffs' personal injury claims fall within the intended scope of the statute.

**II.     THE CLAIMS ASSERTED ON BEHALF OF UNIDENTIFIED CLAIMANTS FAIL**

   **A.     Rule 17 Bars Plaintiff Clay From Asserting Claims On Behalf Of Unidentified Potential Plaintiffs**

Rule 17 of the Federal Rules of Civil Procedure provides that each action shall be prosecuted in the name of the real party in interest. Only the following persons may sue in their own names without joining the person for whose benefit the action is brought: (1) an executor;

9

(2) an administrator; (3) a guardian; (4) a bailee; (5) a trustee of an express trust; (6) a party with whom or in whose name a contract has been made for another's benefit; and (7) a party authorized by statute. Fed. R. Civ. P. 17. Neither Clay or Johnson's counsel, nor Clay or Johnson, satisfies any of these exceptions that would permit them to assert future claims of the John and Jane Does.

The Advisory Committee Notes make abundantly clear that Rule 17 does not permit the joinder of John and Jane Doe plaintiffs in civil actions. Commenting on the Rule 17 provision that states "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for [joinder of] the real party in interest," the Committee noted:

> The provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made. It does not mean, for example, that, following an airplane crash in which all aboard were killed, an action may be filed in the name of John Doe (a fictitious person), as personal representative of Richard Roe (another fictitious person), in the hope that at a later time the attorney filing the action may substitute the real name of the real personal representative of a real victim, and have the benefit of suspension of the limitation period.

Fed. R. Civ. P. 17 advisory committee's note on 1966 amendment; s*ee also Lans v. Gateway 2000, Inc.*, 84 F. Supp. 2d 112, 119-122 (D.D.C. 1999) (endorsing advisory committee's note on 1966 amendment and denying motion to amend to substitute the real party in interest where there was no honest or understandable mistake as to the real party's identity). The Amended Complaint specifically alleges that there are only ten John and Jane Does and that "[t]he official United States Army Criminal Investigative Division ("CID") report, assembled at the scene, list every U.S. servicemen [sic], servicewomen [sic], and military dependant wife killed or injured in the bombing attack." Am. Compl. ¶ 25. There has been ample time — over two decades — for

Plaintiffs and their counsel to locate those listed in the report.  The claims of the Doe Plaintiffs should be dismissed.

### B. Plaintiffs May Not Bring The Claims Of The Unidentified Potential Plaintiffs As A Class Action

Plaintiffs blithely assert claims in a representative capacity "for the benefit and on behalf of all those legally entitled to assert a claim."  Am. Compl. ¶ 1.  Yet the Amended Complaint is devoid of any allegations regarding the basic elements of a class action, and falls well short of the pleading standards under Rule 8.  *See, e.g.*, *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996) ("There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled." (quoting *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974))); *Stambaugh v. Kansas Dep't of Corr.*, 151 F.R.D. 664, 672 (D. Kan. 1993) ("Conclusory allegations . . . are not enough.").  Plaintiffs' attempt to bring representative claims — on behalf of the ten John and Jane Does (or any other purported claimant) — thus fails for insufficient pleading.

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss the Amended Complaint in its entirety with prejudice. The Libyan State Defendants expressly reserve all rights, defenses, privileges, and immunities.

Dated: April 11, 2008

Respectfully submitted,

**WHITE & CASE** LLP

/s/ Christopher M. Curran
Christopher M. Curran (D.C. Bar No. 408561)
Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Nicole E. Erb (D.C. Bar No. 466620)
701 Thirteenth Street, N.W.
Washington, DC 20005
Tel.: (202) 626-3600
Fax: (202) 639-9355

*Counsel for the Socialist People's Libyan Arab Jamahiriya and the Jamahiriya Security Organization*