**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| DARYAL V. CLAY, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | 1:06-cv-00707-RWR |
| | ) | |
| SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRYA, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

---

**THE LIBYAN STATE DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**

**WHITE & CASE** LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Tel.:  (202) 626-3600
Fax:  (202) 639-9355

*Counsel for the Socialist People's Libyan Arab Jamahiriya and the Jamahiriya Security Organization*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION .................................................................................................1

ARGUMENT .......................................................................................................2

I.      PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO
LIABILITY  MAY NOT BE DECIDED UNTIL THE COURT ESTABLISHES
SUBJECT-MATTER JURISDICTION.................................................................2

II.      PLAINTIFFS' MOTION SHOULD BE DENIED AS PREMATURE BECAUSE
THE PARTIES HAVE NOT HAD THE OPPORTUNITY TO ENGAGE IN
ANY DISCOVERY ...........................................................................................4

III.     PLAINTIFFS HAVE FAILED TO SUBMIT EVIDENCE IN CONFORMITY
WITH FEDERAL RULE OF CIVIL PROCEDURE 56(e)...............................24

IV.     SUMMARY JUDGMENT ON LIABILITY MUST BE DENIED BECAUSE
PLAINTIFFS FAIL TO STATE A CLAIM FOR WHICH RELIEF MAY BE
GRANTED .......................................................................................................27

CONCLUSION.....................................................................................................30

## TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144 (1970)............................................................................................4

*Aguinda v. Texaco, Inc.*,
  142 F. Supp. 2d 534 (S.D.N.Y. 2001), *aff'd*, 303 F.3d 470 (2d Cir. 2002)...............26

*Americable Int'l, Inc. v. Dep't of Navy*,
  129 F.3d 1271 (D.C. Cir. 1997)...........................................................................5, 6

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 256 (1986)............................................................................................6

*Article II Gun Shop, Inc. v. Gonzales*,
  441 F.3d 492 (7th Cir. 2006), *cert denied*, 127 S.Ct. 509 (2006)...............................25

*Barnes v. District of Columbia*,
  242 F.R.D. 113 (D.D.C. 2007).............................................................................6

*Beech Aircraft Corp. v. Rainey*,
  488 U.S. 153, 171 (1988)....................................................................................11

*\*Berkeley v. Home Ins. Co.*,
  68 F.3d 1409 (D.C. Cir. 1995).............................................................................7

*\*Bias v. Advantage Int'l, Inc.*,
  905 F.2d 1558 (D.C. Cir. 1990)..........................................................................4, 5

*Bortell v. Eli Lilly and Co.*,
  406 F. Supp. 2d 1 (D.D.C. 2005)........................................................................28

*Brainard v. Am. Skandia Life Assurance Corp.*,
  432 F.3d 655 (6th Cir. 2005)..............................................................................22

*Breen v. Peters*,
  474 F. Supp. 2d 1 (D.D.C. 2007).......................................................................5, 7

*Brown v. Dep't of Justice*,
  715 F.2d 662 (D.C. Cir. 1983) ...........................................................................20

*Bynum v. District of Columbia*,
  215 F.R.D. 1 (D.D.C. 2003)................................................................................6

*Carey Canada, Inc. v. California Union Ins. Co.*,
  748 F. Supp. 8 (D.D.C. 1990).............................................................................25

## TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Catrett v. Johns-Manville Sales Corp.*,
  826 F.2d 33 (D.C. Cir. 1987) ...................................................................................25

*\*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .........................................................................................4, 5

*Chappell-Johnson v. Powell*,
  440 F. 3d 486 (D.C. Cir. 2006) .................................................................................7

*City of Rome v. United States*,
  450 F. Supp. 378 (D.D.C. 1978) ...............................................................................6

*\*El-Fadl v. Cent. Bank of Jordan*,
  75 F.3d 668 (D.C. Cir. 1996) ...................................................................................26

*Erie Ins. Exchange v. Stark*,
  962 F.2d 349 (4th Cir. 1992) ...................................................................................21

*First Chicago Int'l v. United Exch. Co. Ltd.*,
  836 F.2d 1375 (D.C. Cir. 1988) .................................................................................6

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
  905 F.2d 438 (D.C. Cir. 1990) ...................................................................................2

*Fuller v. United States*,
  407 F.2d 1199 (D.C. Cir. 1967) ...............................................................................16

*Gleklen v. Democratic Congressional Campaign Comm.*,
  199 F.3d 1365 (D.C. Cir. 2000) .......................................................................9, 17, 24

*Godbey v. Frank E. Basil, Inc.*,
  603 F. Supp. 775 (D.D.C. 1985) ...............................................................................28

*Graham v. Gonzales*,
  No. Civ. A. 03-1951-RWR, 2005 WL 3276180 (D.D.C. Sept. 30, 2005) ...................................7

*Hall v. Central Intelligence Agency*,
  --- F. Supp. 2d ----, Civ. A. No. 04-814,
  2008 WL 631247 (D.D.C. Mar. 10, 2008) ...................................................................23

*\*In re Papandreou*,
  139 F.3d 247 (D.C. Cir. 1988) ...................................................................................2

*Ikossi v. Dep't of Navy*,
  No. 05-5456, 2008 WL 540234 (Feb. 29, 2008 D.C. Cir. 2008) ...........................................7

## TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Kelly v. Syria Shell Petroleum Dev.*,
  213 F.3d 841 (5th Cir. 2000) ...........................................................................3

*\*Khan v. Parsons Global Servs. Ltd.*,
  428 F.3d 1079 (D.C. Cir. 2005)......................................................................6, 8

*\*Londrigan v. Fed. Bureau of Investigation*,
  670 F.2d 1164 (D.C. Cir. 1981) ......................................................................25

*Loughlin v. United States*,
  230 F. Supp. 2d 26 (D.D.C. 2002) ....................................................................6

*Martin v. Malhoyt*,
  830 F.2d 237 (D.C. Cir. 1987) ...........................................................................5

*Naples v. United States*,
  344 F.2d 508 (D.C. Cir. 1964) .........................................................................17

*Nat'l Ass'n of Gov't Employees v. Campbell*,
  593 F.2d 1023 (D.C. Cir. 1978) .......................................................................21

*Nat'l State Bank v. Fed. Reserve Bank of N.Y.*,
  979 F.2d 1579 (3d Cir. 1992)........................................................................4, 5

*N.D. State Univ. v. United States*,
  255 F.3d 599 (8th Cir. 2001) ......................................................................22, 24

*Nixon v. Freeman*,
  670 F.2d 346 (D.C. Cir. 1982) ...........................................................................6

*\*Phoenix Consulting, Inc. v. Republic of Angola*,
  216 F.3d 36 (D.C. Cir. 2000) .............................................................................2

*Preis v. Lexington Ins. Co.*,
  508 F. Supp. 2d 1061 (S.D. Ala. 2007)..............................................................9

*Resolution Trust Corp. v. Dunmar Corp.*,
  43 F.3d 587 (11th Cir. 1995) .............................................................................9

*Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic*,
  877 F.2d 574 (7th Cir. 1989) .........................................................................2, 3

*Salazar v. Islamic Republic of Iran*,
  370 F. Supp. 2d 105 (D.D.C. 2005) .................................................................27

**TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*Scarborough v. Harvey*,
   493 F. Supp. 2d 1 (D.D.C. 2007) ..................................................................5

*Sears, Roebuck & Co. v. Gen. Servs. Admin.*,
   553 F.2d 1378 (D.C. Cir. 1977) ...................................................................21

*Segni v. Commerical Office of Spain*,
   816 F.2d 344 (7th Cir. 1987) .........................................................................3

*\*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
   127 S. Ct. 1184 (2007) ...................................................................................2

*\*Steel Co. v. Citizens for Better Env't*,
   523 U.S. 83 (1998) .........................................................................................2

*Thompson v. Chautauqua Airlines*,
   No. 3:04-0811, 2005 WL 3216303 (M.D. Tenn. Nov. 28, 2005) ................29

*United States v. Four Parcels of Real Property*,
   941 F.2d 1428 (11th Cir. 1991) .....................................................................5

*United States v. Shorter*,
   618 F. Supp. 255 (D.D.C. 1985) ..................................................................23

*\*Wash. Post Co. v. Keogh*,
   365 F.2d 965 (D.C. Cir. 1966), *cert. denied*, 385 U.S. 1011 (1967) ....22, 24

*Winder v. Erste*,
   511 F. Supp. 2d 160 (D.D.C. 2007) .............................................................17

*Wolcott v. Ginsburg*,
   697 F. Supp. 540 (D.D.C. 1988) ..................................................................10

*Yousuf v. Samantar*,
   451 F.3d 248 (D.C. Cir. 2006) .....................................................................26

*Zheng v. Gonzales*,
   409 F.3d 804 (7th Cir. 2005) .......................................................................26

## TABLE OF AUTHORITIES

**Page**

### STATE CASES

*Burroughs v. Magee*, 118 S.W.3d 323 (Ten. 2003)........................................................28

*Green v. Chicago Tribune Co.*,
  675 N.E.2d 249 (Ill. App. Ct. 1996) ...................................................................28

*Proto v. Graham*,
  788 So.2d 393 (Fla. Dist. Ct. App.— 5th 2001) ...............................................28, 29

*Tallahassee Furniture Co. v. Harrison*,
  583 So.2d 744 (Fla. Dist. Ct. App.— 1st 1991)......................................................29

### FEDERAL RULES AND STATUTES

Fed R. Civ. P. 15(a) ....................................................................................................1

Fed R. Civ. P. 45(a)(1)(C) .........................................................................................26

Fed R. Civ. P. 56(f)...............................................................................................7, 8

Fed R. Civ. P. 56(e) .........................................................................................22, 24, 25

Fed. R. Evid. 106 .....................................................................................................11

Fed. R. Evid. 702 ....................................................................................................23

Fed. R. Evid. 703 ....................................................................................................23

Fed. R. Evid. 801 ................................................................................................19, 24

Fed. R. Evid. 802 ....................................................................................................24

Fed. R. Evid. 804(b)(3)..............................................................................................16

Fed. R. Evid. 805 ................................................................................................16, 24

Fed. R. Evid. 901 ....................................................................................................25

National Defense Authorization Act of 2008, Pub. L. No. 110-181, § 1083 ............................1, 3

## TABLE OF AUTHORITIES

**Page**

## LEGISLATIVE MATERIAL

Agreements on Judicial Assistance: Taking of Evidence,
  Feb. 1, 1980, U.S.-F.R.G., 32 U.S.T. 4181 ..............................................................15

Commission to Take Depositions, 22 C.F.R. § 92.53....................................................15

Convention on the Taking of Evidence Abroad in Civil and Commercial Matters,
  July 27, 1970, 23 U.S.T. 2555 ................................................................................12

## OTHER MATERIAL

7 J. Wigmore,
  Evidence in Trials at Common Law § 2113, p. 653 (J. Chadborn rev. 1978) .............11

11 James Wm. Moore et al.,
  Moore's Federal Practice ¶ 56.13[1] (3d ed. 1997) ................................................4, 5

Charles Alan Wright & Arthur R. Miller, 10A *Federal Practice
  & Procedure* § 2722 (2008) .....................................................................................24

Charles Alan Wright & Arthur R. Miller,
  10B federal practice & procedure § 2738 (2008) ......................................................21

U.S. Department of State, Judicial Assistance Germany,
  *available at* http://travel.state.gov/law/info/judicial/judicial_648.html
  (last visited Apr. 6, 2008) .........................................................................................16

Charles Alan Wright & Victor James Gold,
  29 *Federal Practice and Procedure* § 6273, at 312 (1997)......................................23

## INTERNATIONAL MATERIAL

*Chraidi v. Germany*, No. 65655/01
  (Eur. Ct. H.R. Jan. 26, 2007) ...............................................................................11, 16

## INTRODUCTION

Plaintiffs' Motion for Partial Summary Judgment as to Liability should be denied because it is both unsupported and premature: (1) the Court has not determined subject-matter jurisdiction to exist in this case, which must be decided before issues of liability may even be considered; (2) the parties have not engaged in any jurisdictional or merits discovery and the Libyan State Defendants require the opportunity to engage in discovery; (3) Plaintiffs have failed to state claims pursuant to which liability may even be entered; and (4) in any event, Plaintiffs' evidence is insufficient under Rule 56 to establish liability (or even subject-matter jurisdiction) at this early stage.

Plaintiffs' alleged claims arise from the bombing of the La Belle discotheque in Berlin, which took place on April 5, 1986. Plaintiffs did not file their original complaint until twenty years later on April 19, 2006 under former Section 1605(a)(7) of the Foreign Sovereign Immunities Act ("FSIA"). On January 31, 2008, Plaintiffs moved for leave to amend their complaint on the basis of Section 1083 of the National Defense Authorization Act of 2008, Pub. L. No. 110-181 (the "Defense Act"), which amended the FSIA. The Court granted that motion on March 3, 2008, holding that Plaintiffs were entitled to file an amended complaint as of right under Rule 15(a) of Federal Rules of Civil Procedure and directing the Clerk to file Plaintiffs' Amended Complaint.

On March 12, 2008, Plaintiffs moved for partial summary judgment on liability. On April 11, 2008, the Libyan State Defendants filed a motion to dismiss for lack of subject-matter jurisdiction under the FSIA. (Dkt. No. 47). That motion challenges the legal sufficiency of Plaintiffs' jurisdictional allegations. As discussed below, the Court must deny the instant motion for the lack subject-matter jurisdiction to hear this case. However, to the extent that the Court denies the Libyan State Defendants' Motion to Dismiss, Plaintiffs' Motion for Partial Summary

Judgment should be denied to afford the Libyan State Defendants the opportunity to engage in discovery.

## ARGUMENT

### I. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT MUST BE DENIED BECAUSE THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER THE CLAIMS

Plaintiffs ask this Court to enter partial summary judgment as to liability before the Court has ruled on the question of its subject-matter jurisdiction to hear their claims. However, it is well-settled that a federal court must resolve the question of subject-matter jurisdiction under the FSIA to hear a case before adjudicating the merits. *In re Papandreou*, 139 F.3d 247, 254-55 (D.C. Cir. 1988) ("[R]esolving a merits issue while jurisdiction is in doubt carries the courts beyond the bounds of authorized judicial action . . . and violates the principle that the first and fundamental question is that of jurisdiction.") (internal citations and quotation marks omitted); *see also Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1191 (2007) ("Without jurisdiction the court cannot proceed at all in any cause; it may not assume jurisdiction for the purpose of deciding the merits of the case.") (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94 (1998)).

Furthermore, "[i]n order to preserve the full scope of [foreign sovereign] immunity, the district court must make the 'critical preliminary determination' of its own jurisdiction as early in the litigation as possible; to defer the question is to 'frustrate the significance and benefit of entitlement to immunity from suit.'" *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000) (quoting *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990)). "'[S]overeign immunity is an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits.'" *Foremost-McKesson*, 905 F.2d at 443 (quoting *Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic*, 877 F.2d 574,

576 n.2 (7th Cir. 1989)); *Kelly v. Syria Shell Petroleum Dev.*, 213 F.3d 841, 849 (5th Cir. 2000) (holding that a foreign state is immune "not only from liability, but also from burdens of litigation, including costs in time and expense and other disruptions attendant to litigation"); *Segni v. Commerical Office of Spain*, 816 F.2d 344, 347 (7th Cir. 1987) ("A foreign government should not be put to the expense of defending what may be a protracted lawsuit without an opportunity to obtain an authoritative determination of its amenability to suit at the earliest possible opportunity.") (internal citation omitted).

On April 11, 2008, the Libyan State Defendants filed a Motion to Dismiss challenging the Court's subject-matter jurisdiction under the FSIA to hear the claims in this case. Specifically, the Libyan State Defendants argued that Section 1083 of the Defense Act, does not permit U.S. courts to resurrect cases that were jurisdictionally untimely before the enactment of the new law. This action was filed almost twenty years after Plaintiffs' claims arose in April 1986. Section 1083(c)(2)(A)(i)-(iv) of the Defense Act only permits certain limited pending actions to be re-filed under the new law — those that, among other things, were adversely affected on the grounds that neither the former terrorism exception to immunity nor the Flatow Amendment created a cause of action against the state. The Motion to Dismiss argues that this action was jurisdictionally untimely and therefore could not have been adversely affected by such a ruling.

In addition, the Libyan State Defendants argued that neither the former terrorism exception nor new § 1605A of the FSIA encompass Plaintiffs' personal injury claims as those injuries were not caused by any of the limited predicate acts listed in § 1605(a)(7) or § 1605A. That is, Plaintiffs' injuries were not caused by aircraft sabotage, hostage-taking, torture, or extrajudicial killing. Moreover, there is at least one case in which this Court has questioned

whether victims of personal injuries resulting from a bombing may establish jurisdiction using "extrajudicial killing" as the requisite predicate act on the basis that others in the incident were killed.  Such a reading would lead to the peculiar result that the question whether personal-injury victims could bring a cause of action would depend entirely on whether others happened to have died in the incident.  There is no suggestion that this is what Congress intended.

In view of the lack of subject-matter jurisdiction of this Court to hear Plaintiffs' claims, Plaintiffs' Motion for Partial Summary Judgment must be denied.

## II.    PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THE PARTIES HAVE NOT HAD THE OPPORTUNITY TO ENGAGE IN ANY DISCOVERY

As discussed below, Plaintiffs' Motion for Partial Summary Judgment must be denied for the additional reason that Plaintiffs' own evidence (which does not meet the requisite summary judgment standards) is insufficient to prove their claims.  Moreover, Plaintiffs' own evidence raises material factual disputes regarding which the Libyan State Defendants are entitled to discovery.

### A.    The Movant's Burden

A party moving for summary judgment has the initial burden to demonstrate the absence of a genuine issue of material fact through the record.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bias v. Advantage Int'l, Inc.*, 905 F.2d 1558, 1560 (D.C. Cir. 1990); 11 James Wm. Moore et al., Moore's Federal Practice ¶ 56.13[1] (3d ed. 1997) ("The movant may not meet this burden by asserting that summary judgment should be granted.  Nor is this initial burden satisfied by conclusions and unsupported factual allegations.").  The movant may not — as the case is here — present a factual scenario that contains "unexplained gaps."  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970); *see also Nat'l State Bank v. Fed. Reserve Bank of N.Y.*, 979 F.2d 1579, 1581 (3d Cir. 1992).  Where the party moving for summary judgment is the

4

plaintiff — the party who will bear the ultimate burden of proof at trial — the standard is "more stringent." *Nat'l State Bank*, 979 F.2d at 1582; *see also* 11 James Wm. Moore et al., Moore's Federal Practice ¶ 56.13[1] (3d ed. 1997). Further, a plaintiff moving for summary judgment "must make a showing" on each element of the claim "insofar as those claims involve issues on which it will bear the burden at trial." *Bias*, 905 F.2d at 1560-61; *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) ("In other words, the moving party must show that, on the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party."). As discussed below, Plaintiffs have failed to discharge their summary judgment burden.

### B.    The Non-Movant's Burden

Because Plaintiffs have failed to discharge their burden, the burden does not shift to the Libyan State Defendants. Even assuming that Plaintiffs have discharged their burden, however, the D.C. Circuit has "long recognized that a party opposing summary judgment needs a 'reasonable opportunity' to complete discovery before responding to a summary judgment motion and that 'insufficient time or opportunity to engage in discovery' is cause to defer decision on the motion." *Khan v. Parsons Global Servs. Ltd.*, 428 F.3d 1079, 1087 (D.C. Cir. 2005) (quoting *Martin v. Malhoyt*, 830 F.2d 237, 256 (D.C. Cir. 1987)); *Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997) ("[S]ummary judgment ordinarily is proper only after the [opposing party] has been given adequate time for discovery." (internal quotation marks omitted)); *accord Breen v. Peters*, 474 F. Supp. 2d 1, 7 (D.D.C. 2007) ("Summary judgment is premised on the notion that parties will have had 'adequate time for discovery' to establish whether a genuine issue of material fact exists." (quoting *Celotex*, 477 U.S. at 322); *Scarborough v. Harvey*, 493 F. Supp. 2d 1, 17 (D.D.C. 2007) (holding that "[a] grant of summary judgment is therefore appropriate only if both parties 'have had a full opportunity to

conduct discovery . . . .'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)). At least one court has gone as far as to hold that "summary judgment motions [are] premature until **all** discovery has been completed." *City of Rome v. United States*, 450 F. Supp. 378, 384 (D.D.C. 1978) (emphasis added).

Denial of summary judgment, therefore, is warranted where the parties have had no opportunity to conduct any discovery before the summary-judgment motion was filed, as is the case here. *See Khan*, 428 F.3d at 1087 (directing the district court on remand to address plaintiffs' Rule 56(f) submission where the parties had not conducted discovery); *Americable Int'l*, 129 F.3d at 1274 (reversing district court's decision to grant defendants' summary-judgment motion because "the district court did not permit Americable any discovery before issuing its ruling"); *First Chicago Int'l. v. United Exchange Co., Ltd.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988) (reversing district court's decision to grant summary-judgment motion because "virtually no discovery on the merits had occurred"); *Barnes v. District of Columbia*, 242 F.R.D. 113, 116 (D.D.C. 2007) (denying motion for summary judgment because "this case is at far too early of a state for summary judgment to be appropriate" as "[t]here has been no discovery and the record is thin"); *Bynum v. District of Columbia*, 215 F.R.D. 1, 2 (D.D.C. 2003) ("The Court concludes that it would be premature to consider a motion for summary judgment when the discovery process, which has apparently not even commenced, might yield additional facts that would guide the Court's decision . . . ."); *Loughlin v. U.S.*, 230 F. Supp. 2d 26, 51 (D.D.C. 2002) ("The Loughlins have yet to conduct discovery, and thus, it would be premature to grant Glenbrook-Brandt's [summary-judgment] motion.").

A non-movant may submit an affidavit to the Court detailing why discovery is necessary to oppose the motion.  Fed. R. Civ. P. 56(f) (2008).  Rule 56(f) of the Federal Rules of Civil Procedure provides:

> **When Affidavits Are Unavailable.**  If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) deny the motion;
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
> (3) issue any other just order.

Rule 56(f) instructs the Court to deny one party's summary-judgment motion when the other party demonstrates by affidavit that "discovery may produce evidence capable of . . . creating a genuine issue of fact."  *Graham v. Gonzales*, No. Civ. A. 03-1951-RWR, 2005 WL 3276180, n.6 at *5 (D.D.C. Sept. 30, 2005) ("motion for summary judgment will be denied as premature"); *see also Breen*, 474 F. Supp. at 8 ("Here, because plaintiffs have not had an opportunity to adequately develop the facts, no fair determination can be made as to whether a genuine issue of material fact exists. Accordingly, defendants' motion for summary judgment will be denied without prejudice . . . .").  This Circuit is liberal in granting Rule 56(f) requests for discovery.  *See Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414-15 (D.C. Cir. 1995) (stating that the Circuit is liberal in granting Rule 56(f) requests for discovery).  Thus, a district court will be deemed to have "abused its discretion" in granting summary judgment against a Rule 56(f) submission when the adverse party has "been afforded no discovery," seeks "reasonable discovery," and has identified "the nature of the evidence," it seeks to create a genuine issue of material fact.  *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045-48 (D.C. Cir. 2008) (reversing district court's grant of summary judgment); *see also Chappell-Johnson v. Powell*, 440 F. 3d 484, 489 (D.C. Cir. 2006) (reversing grant of summary judgment when opposing "counsel's

declaration pointed to the type of evidence that might raise" a genuine issue of material fact); at minimum, the district court should rule on the discovery requests outlined in the Rule 56(f) submission before granting summary judgment.  *See Khan*, 428 F. 3d at 1087 (reversing a grant of summary judgment because "the district court never ruled on the [adverse party's] initial Rule 56(f) discovery request").

As stated in the attached Rule 56(f) Declaration of Nicole E. Erb dated April 14, 2008 ("Erb Decl.") and as detailed below, Plaintiffs' Motion for Partial Summary Judgment should be denied because the Libyan State Defendants have yet to conduct any discovery and much discovery is needed.

### C.    The Libyan State Defendants Are Entitled To Discover Information To Adequately Oppose Plaintiffs' Summary Judgment Motion

Plaintiffs claim that the Libyan State Defendants are "clearly liable" for the La Belle incident, under an aiding and abetting theory, because they allegedly "ordered, planned, organized, and then provided critical material assistance" to those who carried out the bombing. Pls.' Mot. at 13.  In support of their claim, Plaintiffs assert that: (1) the Libyan intelligence service in Tripoli ordered the Libyan Embassy in East Berlin to plan attacks against Americans in West Berlin; (2) "the Libyan intelligence service transported the bomb and other equipment for the bombing to the Libyan Embassy in East Berlin;" (3) the "staff of the Libyan Embassy in East Berlin, Germany included members of the Libya intelligence service"; (4) the "staff of the Libyan Embassy in East Berlin planned and organized the bombing" and made payments to the perpetrators; (5) "telexes were exchanged" that show that the Libyan government had knowledge of the bombing prior to its execution, and the Libyan Embassy instructed the Libyan intelligence service that the operation was a success after the bombing; and (6) "Qadhafi admitted Libya's role in the LaBelle bombing."  *Id.*

Plaintiffs generally purport to support their claim through mere excerpts from the Berlin criminal proceedings against the alleged perpetrators of the attack and other unauthenticated documents. Despite the volume of materials attached to their Motion, Plaintiffs make little effort to explain the perceived value of each exhibit to the requested relief leaving this task to the Court. *See Preis v. Lexington Ins. Co.*, 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007) ("Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions. Similarly, '[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.'" (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995))). As discussed below, Plaintiffs have failed to adequately support each element of their claim. In addition, Plaintiffs have failed to provide the full sources upon which they rely to give context to their proffers.

### 1.    Plaintiffs' Proffer Contains Substantial Hearsay

Hearsay is "a statement, other than one made by the declarant . . . offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Plaintiffs may not rely on hearsay evidence to support their Motion for Summary Judgment. *See Gleklen v. Democratic Congressional Campaign Comm.*, 199 F. 3d 1365, 1369 (D.C. Cir. 2000) (evidence relied upon in summary judgment dispute "must be capable of being converted into admissible evidence," or else it "counts for nothing") (citation omitted).

However, as Defendants' Counterstatement of Allegedly Undisputed Facts makes clear, Plaintiffs rely on inadmissible hearsay as their sole cited support for substantial portions of their alleged "undisputed facts," including all factual support for the Berlin convictions, all support for their allegations that the convicted defendants in that case were acting as agents on behalf of Libya, and all support for their allegations as to motive. Because Plaintiffs fail to trace essential

portions of their list of allegedly "undisputed facts" to admissible evidence, they fail to meet the heavy burden necessary for Plaintiffs to obtain partial summary judgment. *See* Section II.A, *supra*.

### 2. The Libyan State Defendants Are Entitled To Discover Evidence Regarding The Berlin Criminal Court Proceedings

Plaintiffs proffer six documents related to the Berlin criminal proceedings through the Declaration of Andreas Schulz (a German attorney who represented alleged victims of the bombing in the criminal case): (1) excerpts of the verdict and factual findings of the Berlin District Court in the criminal case against *Yasser Mohamed Chraidi, et al.*, Reference No.: (539) 1 Js2/92 KLs (8/97), November 13, 2001 (Pls.' Ex. 1(a)) (the "Berlin Decision"); (2) the September 10, 1996 confession of Musbah Abulgasem Eter, that was deemed inadmissible by the Berlin District Court (Pls.' Ex. 1(b)); (3) the October 16, 1996 confession of Musbah Abulgasem Eter (Pls.' Ex. 1(c)); (4) a cable communication from the German Ambassador to the United States dated March 31, 2001 (Pls.' Ex. 1(d)); (5) a supposed transcription of allegedly intercepted Libyan cable communications dated March 25 – April 5, 1986 (Pls.' Ex. 1(e)); and (6) the arrest warrant of Said Rashid and others (Pls.' Ex. 1(f)).

#### a. Berlin Decision

The Berlin Decision does not have preclusive effect with respect to the case before the Court because Libya was not a party in the Berlin criminal proceedings. *See* Pls.' Ex. 1(a); *see also Wolcott v. Ginsburg*, 697 F. Supp. 540, 543 (D.D.C. 1988) (denying plaintiffs' summary-judgment motion and declining to give an Israeli court's decision preclusive effect because the defendants were not parties to the underlying litigation and thus did not have an opportunity to vindicate themselves). Nonetheless, the Libyan State Defendants are entitled to discovery with respect to the Berlin Decision.

Andreas Schulz declares that the Berlin Decision is an "authentic cop[y]," yet the Schulz Declaration inexplicably attaches only excerpts of the decision (i.e., pages 1-6, 238-242, 380). Substantial portions of the 380-page decision are missing. *See* Pls.' Ex. 1(a). Given the fact that the Libyan State Defendants do not have access to the decision, this effectively robs Defendants of their rights under Federal Rule of Evidence 106, otherwise known as the "rule of completeness." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171 (1988). Under the rule of completeness, "the opponent, against whom a part of an utterance has been put in, may in his turn complement it by putting in the remainder, in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance." *Id.* (footnote omitted) (citing 7 JOHN H. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2113, at 653 (Chadbourn rev. 1978)). Thus, at a minimum, the Libyan State Defendants must obtain proper discovery in order to fully "complement" the Plaintiffs' selected excerpts from the Berlin Decision. Moreover, without the ability to review and consider a full copy of the Berlin Decision, the Court is not in a position to assess the reliability of the decision and the Libyan State Defendants are at an immediate disadvantage.

The Berlin criminal proceedings spanned nearly five years, from January 30, 1997 — the date that five accused perpetrators were indicted — to November 13, 2001 — the date that the court issued convictions. *See Chraidi v. Germany*, No. 65655/01 (Eur. Ct. H.R. Jan. 26, 2007) at ¶¶ 12-16, available at http://www.menschenrechte.ac.at/orig/06_5/Chraidi.pdf, attached as Exhibit 1 to the Erb Decl. The Berlin District Court "held 281 hearings with an average of two hearings per week and [heard testimony] from 169 witnesses." *Id*. at ¶ 17. Given the substantial and complex nature of the Berlin criminal proceedings, the Libyan State Defendants are entitled to discover all materials in connection with the Berlin criminal proceedings that could challenge

Plaintiffs' reliance on selective excerpts of the Berlin Decision as evidence of the Libyan State Defendants' civil liability in this case. Such discovery would include all witness statements, trial exhibits, transcripts of proceedings, and decisions of the Berlin District Court and the Federal Supreme Court upon review.

Materials generated in connection with a criminal case in Germany are not readily available to the public as they might be under the U.S. legal system. *See* Aff. of Nils Clemm at ¶¶ 3-7, dated Apr. 14, 2008 ("Clemm Aff."). The Libyan State Defendants have begun the process of obtaining the full criminal case file. To the extent that such efforts prove fruitless, this Court's intervention pursuant to Letters of Request under The Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters ("Hague Convention") may become necessary. Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, July 27, 1970, 23 U.S.T. 2555. A discovery order would presumably be necessary for this purpose.

Notwithstanding the above, even Plaintiffs' self-selected excerpts of the Berlin Decision, as well as other exhibits, reveal that much discovery is necessary to oppose Plaintiffs' Motion for Partial Summary Judgment.

> **b.    Confessions of Musbah Abulgasem Eter and Statements of Other Implicated Individuals**

Plaintiffs purport to support their allegations with the confessions of Musbah Abulgasem Eter and, to a lesser extent, other implicated individuals. Eter's alleged confessions are inadmissible hearsay. Kor Uwe Wilhelms, who represented the Office of Criminal Investigation in Berlin, acted as the "recording clerk" for Eter's alleged September 1996 confession. The Libyan State Defendants require discovery with respect to Eter in order ascertain the circumstances under which his confessions were given. Discovery is especially necessary with

respect to Eter's September 10, 1996 confession — a confession that the Berlin District Court deemed inadmissible.  Pls.' Ex. 1(b); *see* Decision of the Federal Supreme Court dated June 24, 2004, attached to the Erb Decl. as Exhibit 2 (affirming the Berlin District Court's decision on the inadmissibility of Eter's Sept. 10, 1996 confession).  Not only have Plaintiffs failed to mention this point, they have omitted from the record any portion of the Berlin Decision that might reveal that the Court determined the confession to be inadmissible.

The Libyan State Defendants are also entitled to discovery to explore Eter's potentially self-serving motivation for confessing.  The Berlin District Court noted that Eter's statements, which placed responsibility for the planning of La Belle on his superiors, must be viewed in light of Eter's potential interest in "easing his own case to incriminate [Al] Keshlaf and [Abdallah] Elamin."  Pls.' Ex. 1(a) at 241.  Eter, himself, appeared to condition his testimony on being afforded protection: "Naturally I am prepared to repeat these statements in front of a German court . . . [b]ut I would like to be protected."  Pls.' Ex. 1(b) at 40.  The Federal Supreme Court noted that in the opinion of the Berlin District Court: "Defendant E[ter] was deceived insofar as he was given the wrong impression that, in the event of a guilty verdict, confessionary information was very likely to mitigate his sentence irrespective of the significance of his contribution to the crime conceded by him."  *See* Decision of the Federal Supreme Court dated June 24, 2004 at 5 (affirming the Berlin District Court's decision on the inadmissibility of the confession on other grounds), attached to the Erb Decl. as Exhibit 2.

Plaintiffs appear to place heavy reliance on Eter's statements for their allegations about the role of the Libyan secret service and its alleged involvement in the La Belle incident.  It is, therefore, essential that the Libyan State Defendants be able to explore the contradictions between Eter's statements and other testimony and evidence with respect to the Libyan secret

service.  For instance, Eter claimed that an operative of the Libyan secret service was embedded in the Libyan Embassy in Berlin; however, Keshlaf stated that no such "secret resident" was present at the Libyan Embassy.  Pls.' Ex. 1(a) at 239.  Another witness Said Rasheed apparently also testified that "it would have been a scandal had there been a secret service agent resident at [the Libyan Embassy]."  *Id*.  Both Elamin and Keshlaf denied membership in the Libyan secret service.  *Id*.  Discovery regarding Elamin, Keshlaf and Rasheed is necessary as their testimony directly contradicts that of Eter.

The Berlin District Court itself questioned the temporal connection between the La Belle incident and the Libya-U.S. conflict.  The court stated that it "remains to be determined, whether [a motive for the attack] can conclusively be linked with the conflict at the time between Libya and the USA."  *Id.* at 242.

The court further highlighted a disputed question that is critical to this case, namely, whether the Libyan diplomats Keshlaf and Elamin, Eter's superiors, acted autonomously or upon direct instruction from Libya as to the La Belle incident:

> It is also plausible from the court's perspective that in Germany especially the two diplomats Keshlaf and Elamin with their prominent positions and their special contacts established to bureaus [sic] in Libya made the relevant decisions on location, and in the context it could remain open to what extent Elamin and Keshlaf on their part had to operate dependent on instructions from their ministerial departments in Libya, e.g., by Said Rasheed or others.

*Id*.  This issue of attribution also arises in Eter's inadmissible confession of September 10, 1996.  There, he speaks of Keshlaf and Elamin as though they acted independently of authorities in Tripoli.  Pls.' Ex. 1(b) at 32 ("At the time, the people in charge of the [Libyan Embassy] were of the opinion that an attack had to be carried out."); *id*. at 34 ("Later on, Keshlaf and Elamin decided something else would have to be done ― instead of the bus, the attack on the discotheque.").

Accordingly, the Libyan State Defendants are entitled to discover all statements by Keshlaf, Elamin and others that may cast doubt on Eter's statements and any other evidence regarding the alleged involvement of the Libyan State Defendants in the La Belle incident. The Berlin District Court rejected Keshlaf's and Elamin's testimony in this respect in favor of that of Eter, another accused, Ali Chanaa, and the statements of the "MfS witnesses." The Libyan State Defendants are entitled to review these statements and any accompanying testimony and even seek depositions. It is also noteworthy that Chanaa allegedly received some payment for his involvement in La Belle from Elamin and those payments stopped "when Elamin was removed from his office in the [Libyan Embassy]." Pls.' Ex. 1(b) at 34. The propensity for bias in Chanaa's statements is evident and the Libyan State Defendants are entitled to discovery in this respect.

To secure depositions of Eter and the other incarcerated individuals or witnesses located in Germany, the Libyan State Defendants will need a discovery order from this Court to proceed. The deposition process will be dictated by the Hague Convention and related agreements between Germany and the United States. When a witness voluntarily submits to a deposition, the deposition may be taken by notice or by the issuance of a commission by a U.S. court to a "consular officer." Agreements on Judicial Assistance: Taking of Evidence, Feb. 1, 1980, U.S.-F.R.G., 32 U.S.T. 4181; Commission to Take Depositions, 22 C.F.R. § 92.53. Eter and others are unlikely to be capable of consent to being deposed due to their incarceration.

Therefore, in order to compel the depositions, the Libyan State Defendants will be required to submit Letters of Request (duplicated and translated into German), identifying all of the questions to be asked, the subject matter about which the questions pertain, and any documents requested to the Court. Hague Convention at art. 1, art. 3, Federal Republic of

Germany Reservation A; Clemm Aff. ¶ 9. The Court will then transmit the documents to the appropriate Central Authority in Germany for execution. Once executed, a German court will schedule the depositions as part of formal proceedings in which a German judge will ask the questions. U.S. Department of State, Judicial Assistance Germany, *available at* http://travel.state.gov/law/info/judicial/judicial_648.html (last visited Apr. 6, 2008).

Other measures will be necessary to secure the deposition of Yasser Chraidi who apparently has been released from prison in Germany and may be living in Lebanon. *See Chraidi v. Germany*, No. 65655/01 (Eur. Ct. H.R. Jan. 26, 2007) at ¶ 5.

### c.    March 31, 2001 Cable Communication from the German Ambassador to the United States

The Libyan State Defendants are entitled to conduct discovery with respect to the alleged cable communication from the German Ambassador to the United States. Pls.' Ex. 1(d). Plaintiffs' allegation that "Al-Qadhafi admitted Libya's role in the LaBelle bombing" is based on an unverified cable communication from the German Ambassador to the United States. Pls.' Mot. at 8; Pls.' Ex. 1(d). Plaintiffs' evidence constitutes unverified, inadmissible impermissible hearsay — Al Qadhafi allegedly admitted Libya's involvement in the La Belle incident to MD Steiner, who then allegedly repeated the admission to, among others, Ambassador Chrobog, who then allegedly wrote about it in a cable communication introduced by Plaintiffs.

Hearsay is "a statement, other than one made by the declarant . . . offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). For purposes of admissibility, Ambassador Chrobog is the immediate declarant, and Steiner's alleged statement is hearsay. This is true regardless of whether Qadhafi's (the original declarant) alleged statement to Steiner is hearsay not otherwise covered by an exception. *See, e.g.*, FED. R. EVID. 801(d)(2); FED. R. EVID. 804(b)(3); *see also* FED. R. EVID. 805 (stating that double hearsay must be excluded unless

"each part of the combined statements conforms with an exception to the hearsay rule provided in these rules").    Because Steiner's statements are not covered by any exception to the hearsay rule, they are inadmissible hearsay.  *See Naples v. United States*, 344 F.2d 508, 511 (D.C. Cir. 1964) ("[The witness] testified that [a third party] recounted to [the witness], that appellant had admitted to [the third party] that he struck the woman.  This was double hearsay."), *overruled in part on other grounds in Fuller v. United States*, 407 F.2d 1199 (D.C. Cir. 1967); *Winder v. Erste*, 511 F. Supp. 2d 160, 181 (D.D.C. 2007) (in summary judgment case, holding as "double hearsay . . . plaintiff's account of his friend's account of the [original] declarant's statement"). Thus Qadhafi's purported statement has no evidentiary weight.  *See Gleklen v. Democratic Congressional Campaign Comm.*, 199 F. 3d 1365, 1369 (D.C. Cir. 2000) (evidence relied upon in summary judgment dispute "must be capable of being converted into admissible evidence," or else it "counts for nothing") (citation omitted).

Regarding the statements as to Al-Qadhafi's alleged admission of responsibility for La Belle, publicly available documents report that both the Libyan and German governments have denied the accuracy of the allegedly communication's contents, each stating that Al-Qadhafi never made any such admissions to Steiner.  *See, e.g.*, *Germany, Libya Deny Gadhafi Admitted Ties To Terrorist Incidents*, Middle E. News Online, May 15, 2001, *available at* 2001 WLNR 10138364; *Germany Denies Gadhafi Admitted To Bombings*, United Press Int'l, May 16, 2001, *available at* http://www.highbeam.com/doc/1P1-44305757.html.   German Foreign Minister Joschka Fischer, testifying before the German parliament's foreign affairs committee on May 30, 2001, stated that "[i]t is completely clear that there has been absolutely no explanation on the side of Gadhafi which is legally relevant or relevant to evidence," and that it is the German "government's position that Gadhafi had made no such admission."  *Memo Leak Embarrasses*

*Germany*, May 31, 2001, available at http://archives.cnn.com/2001/WORLD/europe /05/31/germany.memo.05/31/germany.memo/index.html. Uwe-Karsten Heye, spokesperson for then-Chancellor Gerhard Schroeder, issued a statement on May 15, 2001 affirming Al-Qadhafi had met with Steiner, but that "individual cases from the past were not discussed" and that Al-Qadhafi had "distanced himself from terrorism in this talk. It was about issues of fighting international terrorism." John Schmid, *Gadhafi Is Said to Have 'Sworn Off' Practice: Libya Reportedly Admits A Terrorist Role in 1980s*, Int'l Hrld. Trib., May 16, 2001, *available at* http://www.iht.com/articles/2001/05/16/libya_ed3__0.php. Steiner himself "denied that Colonel Gadafi had confessed to terrorism," and stated that he had "been misrepresented." *See* Roger Boyes, *Berlin Feud Over Gaddafi Link to Blast*, The Times, May 19, 2001, at 18. On May 15, 2001, a spokesperson for the Libyan government described the communication "as unfounded and a clear fabrication" designed to undermine Libya's foreign policy objectives. *See Libya: Official Criticizes German Report on 1986 Berlin Disco Bombing*, BBC Int'l Rep., May 15, 2001, translating a report by Libyan news agency Jana. Copies of all the foregoing media materials are attached as Exhibit 3 to the Erb Declaration.

### d.    Intercepted Libyan Cable Communications

The Libyan State Defendants require discovery to respond to Plaintiffs' proffer of alleged intercepted cable communications to support their claim. Pls.' Ex. 1(e). The means by which Plaintiffs have offered the alleged cable communications raises concerns about authenticity, admissibility, and reliability. First, Plaintiffs have not proffered the cable communications — allegedly intercepted between March 25, 1986 and April 5, 1986 — themselves. Instead, Plaintiffs attach a letter from the Federal Intelligence Service to the Prosecution of the Superior Court of Justice Berlin purporting to repeat what the alleged cable communications say — notwithstanding the fact that the alleged communications were purportedly written in Arabic and

the letter repeats their alleged contents in German.  It is unclear how the author of the letter came to obtain or review the alleged telex communications.  *See* Pls.' Ex. 1(e) at 1 ("The Federal Intelligence Service (BND) *came to the knowledge of* the following Telex communication . . . .) (emphasis added).  Moreover, the letter is dated October 9, 1996, more than ten years after the alleged cable communications were intercepted.  That the alleged communications have now been twice translated (first from Arabic to German, and now from German to English) raises questions to the reliability of Plaintiffs' proffer.  The letter also contains the author's (whom Plaintiffs have not introduced in any way) opinion as to what the term "almarafiq" likely means.  Further, the letter is hearsay and should not be properly admitted for summary judgment purposes.  Accordingly, discovery as to all aspects of the facts and circumstances surrounding these communications is required, including the whereabouts and untranslated text of the original, and, in particular, discovery regarding the chain of custody is essential.

The authenticity and reliability of the alleged communications is also called into question by other evidence on which Plaintiffs rely.  For example, in the September 10, 1996 confession of Eter, Eter explains that he was present at the Libyan Embassy in Berlin "every day in the days following the attack" and:

> There was no more talk about the attack and I can also say with certainty that no wire was received from Libya on this matter.  At the time, in order to check this, I asked Ali KESHLAF, who was the sole person in the [Embassy] responsible for telecommunications and encryption.  He confirmed expressly that there was no 'congratulation'-wire [sic] from Libya as was wrongly alleged by the press.

Pls.' Ex. 1(b).  In view of Eter's confession, there is a disputed issue as to the authenticity of the alleged intercepted wire communications.  The authenticity of the alleged communications is further complicated by the fact that neither Major General John H. Mitchell nor Lieutenant General Thomas N. Griffin makes mention of the communications in their statements.  *See* Pls.'

Ex. 10; Pls.' Ex. 11.   According to their statements, Mitchell and Griffin are U.S. military officials who had access to intelligence and defense information at the time of the La Belle incident.  *See* Pls.' Ex. 10; Pls.' Ex. 11.

> **e.    Arrest Warrant for Said Rashid, Elamin Elamin, Ali Keshlaf, Souad Chraidi, and Musbah Al Abani**

Plaintiffs purport to support their allegations with an unauthenticated arrest warrant for Said Rashid, Elamin Elamin, Ali Keshlaf, Souad Chraidi, and Musbah Al Abani.  Pls.' Ex. 1(f). Discovery is essential to authenticate the arrest warrants.  For example, the date of the arrest warrant is not apparent on the face of the document.   The Libyan State Defendants are also entitled to discovery with respect to the facts underlying the warrants.  *See Brown v. Dep't of Justice*, 715 F.2d 662, 667 (D.C. Cir. 1983) ("it is well settled that an indictment is not evidence of the acts charged therein").  The arrest warrant states that "[t]he accused are strongly suspected of committing this crime based on the credible confession by the also accused Eter and also by many additional items of supporting evidence."  Pls.' Ex. 1(f) at 4.  In issuing the arrest warrant, the Tiergarten court credited Eter's confession — a confession that the Berlin District Court and Federal Supreme Court found inadmissible.  *See* Decision of the Federal Supreme Court dated June 24, 2004, attached as Exhibit 2 to the Erb Decl. (affirming the Berlin District Court's decision on the inadmissibility of the confession).  For the reasons discussed above, the reliability of Eter's confessions is in question.  Moreover, the Libyan State Defendants require discovery to obtain and analyze the many "additional items of supporting evidence" that formed the basis for the arrest warrant.

> **3.    The Libyan State Defendants Are Entitled To Discovery As To Plaintiffs' Expert Reports**

Plaintiffs submit the expert affidavits of David Long, Ph.D. and Ambassador Robert Oakley to support their conclusion that partial summary judgment is warranted.  However, it is a

well-settled rule that "because opinion testimony always is subject to evaluation by the fact finder," it is not an appropriate basis for summary judgment. Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, 10B *Federal Practice & Procedure* § 2738 (2008) (footnote omitted); *see also Nat'l Ass'n of Gov't Employees v. Campbell*, 593 F.2d 1023, 1030 (D.C. Cir. 1978) (stating that a court should not grant summary judgment when doing so requires the court to evaluate, and credit, opinion testimony) (citations omitted). Expert opinions do not conclusively establish the facts that they discuss. *See Erie Ins. Exchange v. Stark*, 962 F.2d 349, 353 (4th Cir. 1992) ("Neither the factual assumptions underlying an expert's opinion nor the expert's inferences from the facts assumed are automatically established in the absence of a directly countering expert opinion."). Granting summary judgment on the basis of purported expert opinion evidence before discovery has even taken place would strip the Libyan State Defendants of the opportunity to challenge Plaintiffs' evidence and accord improper weight to the alleged experts' opinions. *See Sears, Roebuck & Co. v. Gen. Servs. Admin.*, 553 F.2d 1378, 1383 (D.C. Cir. 1977) (overturning summary judgment when "[t]he District Judge permitted the filing of affidavits, but he did not permit discovery by any techniques.").

Dr. Long's and Ambassador Oakley's affidavits raise factual issues that the Libyan State Defendants can only address after conducting discovery. In particular, the Libyan State Defendants are entitled to fully examine Dr. Long's and Ambassador Oakley's backgrounds, previous expert witness experience, relationship with the Plaintiffs, form of compensation, and bases for their opinions. The Libyan State Defendants must be afforded the opportunity to examine the sources upon which these experts rely and whether these sources are reliable. This is particularly important as the authenticity and admissibility of the unidentified wire interceptions on which the experts rely on is disputed. Discovery is, therefore, necessary to

obtain the information relied upon for the conclusions reached regarding the wire communications, including the depositions of Dr. Long and Ambassador Oakley and requests for the production of documents relied upon by Dr. Long and Ambassador Oakley in forming their opinions. *See* Erb Decl. at ¶ 15.

More importantly, neither the Long nor the Oakley affidavit specifically identifies or attaches the alleged wire intercepts referred to in their affidavits. Rule 56(e) provides that "[i]f a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit." Fed. R. Civ. P. 56(e). "This means that if written documents are relied upon they actually must be exhibited; affidavits that purport to describe a document's substance or an interpretation of its contents are insufficient." CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 10A FEDERAL PRACTICE AND PROCEDURE 3d § 2722 (2008); *Wash. Post Co. v. Keogh*, 365 F.2d 965, 971 (D.C. Cir. 1966), *cert. denied*, 385 U.S. 1011 (1967) (deciding that the affidavit was "clearly inadmissible" and thus could not "be relied upon" because the plaintiff-appellee failed to attach "sworn or certified copies of all papers referred to in the affidavit"); *N.D. State Univ. v. United States*, 255 F.3d 599, 607-08 (8th Cir. 2001) ("When written documents are relied on, they must be exhibited in full . . . .") (citing *Wash. Post*, 365 F.2d at 971)).

In any event, the Long and Oakley opinions regarding the illusory wire intercepts are wholly conclusory and probative of nothing. *See Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 633-64 (6th Cir. 2005) ("An expert opinion submitted in the context of a summary judgment motion must be more than a conclusory assertion about ultimate legal issues."). Neither Dr. Long nor Ambassador Oakley claims to have personal knowledge of the events in question, including the facts and circumstances surrounding the alleged wire interceptions, as

required by Rule 56(e).   Thus, their testimony as presented in the affidavits would not be admissible under Rule 602 of the Federal Rules of Evidence.   Nonetheless, both have submitted "conclusory assertion[s] about ultimate legal issues."   *See* Long Aff. ¶ 8 ("I personally viewed these communication intercepts and they left no doubt in my mind that Libya ordered its agents in Germany to commit the terrorist attack commonly referred to as the LaBelle Discotheque bombing."); Oakley Aff. ¶ 12 ("I testify that these communication intercepts left no doubt that Libya ordered its agents in Germany to commit the terrorist attack commonly referred to as the LaBelle Discotheque bombing.").   Further, any statements about the illusory wire intercepts constitute inadmissible hearsay that does not fall within any exception.   Expert reports may not be used as a backdoor for the admission of hearsay evidence.   *See* CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, 29 FEDERAL PRACTICE AND PROCEDURE § 6273, at 312 (1997) ("Rule 703 does not authorize admitting hearsay on the pretense that it is the basis for expert opinion when, in fact, the expert adds nothing to the out-of-court statements other than transmitting them to the jury.   In such a case, Rule 703 is simply inapplicable and the usual rules regulating the admissibility of evidence control.") (footnotes omitted); *see also* FED. R. EVID. 702 (requiring a proffered expert to have "scientific, technical, or other specialized knowledge that will assist the trier of fact to understand the evidence"); *United States v. Shorter*, 618 F. Supp. 255, 261 n.14 (D.D.C. 1985) ("When the specialized knowledge of an expert is unnecessary to a [trier of fact's] assessment of the salient factual issues, expert testimony will normally be excluded.") (citation omitted).   Because the Plaintiffs' experts do not qualify under Federal Rule of Evidence 702, their affidavits, and the cable communications upon which they rely, must be stricken and given no weight.   *See Hall v. Cent. Intelligence Agency*, Civ. A. No. 04-814, 2008 WL 631247, at *4 (D.D.C. Mar. 10, 2008) (stating that "if any third party statement could be admitted merely

because it was heard (and 'perceived') by the witness, the entirety of hearsay jurisprudence would be nullified").

### 4. The Libyan State Defendants Are Entitled To Discovery As To The Statements of John H. Mitchell and Thomas N. Griffin, Jr.

Plaintiffs have introduced nearly verbatim statements of Major General John H. Mitchell and Lieutenant General Thomas N. Griffin, Jr. The nearly 12-year old statements are inadmissible hearsay under Federal Rules of Evidence 801 and 802, not subject to any exception. Therefore, they may not be relied upon for summary judgment purposes. *See Gleklen*, 199 F.3d at 1369. Even if the statements are not inadmissible hearsay, they contain inadmissible hearsay subject to the double hearsay rule in violation of FED. R. EVID. 805. Moreover, they fail to provide, much less identify or even describe, any of the written documents upon which the statements rely. *See* FED. R. CIV. P. 56(e); 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2722 (3d ed. 2008); *Wash. Post Co. v. Keogh*, 365 F.2d 965, 971 (D.C. Cir. 1966) (finding affidavit inadmissible when not accompanied by sworn copies of all papers referred to in it); *N.D. State Univ. v. United States*, 255 F.3d 599, 607-08 (8th Cir. 2001) (finding that documentary evidence relied on must be produced in full).

The credibility of both General Mitchell's and Lieutenant General Griffin's statements is also at issue and warrants further discovery. As noted, their statements are nearly identical which raises questions as to who wrote them. Moreover, Mitchell and Griffin indicate that they relied, at least in part, on an unidentified "source of undetermined reliability." Pls.' Ex. 10, Mitchell Statement at ¶ 6; Pls.' Ex. 11, Griffin Statement at ¶ 6.

## III. PLAINTIFFS HAVE FAILED TO SUBMIT EVIDENCE IN CONFORMITY WITH FEDERAL RULE OF CIVIL PROCEDURE 56(e)

Notwithstanding the premature nature of their motion, many of Plaintiffs' exhibits should ultimately be stricken as failing to meet the applicable summary judgment standard for the

submission of evidence.  For example, Plaintiffs place heavy emphasis on certain cable communications (Pls.' Ex. 1(d)) and wire intercepts (Pls.' Ex. 1(e)).  The Declaration of Andreas Schulz attaches certain wire intercepts that may or may not have been admitted in the German criminal court proceedings.  Mr. Schulz, however, is not a competent affiant to sponsor those intercepts — he has no personal knowledge, nor does he purport to have any, regarding the source of the intercepts.  FED. R. CIV. P. 56(e); *Londrigan v. Fed. Bureau of Investigation*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) ("[Rule 56(e)'s] requirement of personal knowledge by the affiant is unequivocal and cannot be circumvented."); *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496 (7th Cir. 2006) ("[T]he affiant must be a person through whom the exhibits could be admitted into evidence.").  Accordingly, the papers attached as Pls.' Ex. 1(d) and (e) are nothing more than unauthenticated documents and must be disregarded as such.  *See Carey Canada, Inc. v. California Union Ins. Co.*, 748 F. Supp. 8, 13 (D.D.C. 1990) (granting motion to strike memorandum attached by plaintiffs in support of partial summary judgment where the memorandum was "neither attached to an affidavit nor certified, as required by Rule 56(e) Fed. R. Civ. P") (citing *Catrett v. Johns-Manville Sales Corp.*, 826 F.2d 33, 38 n. 10 (D.C. Cir. 1987)); *see also* Fed. R. Evid. 901 ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.").

Furthermore, it is well-settled that a summary judgment movant cannot establish allegedly undisputed facts through conclusory assertions in unverified materials.  Nonetheless, Plaintiffs append various unverified materials to their brief as supportive of liability such as a State Department report, a State Department official's testimony, and statements made by the Reagan Administration.  Pls.' Exs. 4, 5, 6, 7, 8, 9.  These materials offer nothing more than

conclusory assertions as to Libya's responsibility for the La Belle incident and should be disregarded. *See El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 678 (D.C. Cir. 1996) (finding State Department report "expressing 'concern about the impartiality' of the Jordanian court system" insufficient for *forum non conveniens* purposes); *Aguinda v. Texaco, Inc.*, 142 F. Supp. 2d 534, 544 (S.D.N.Y. 2001), *aff'd*, 303 F.3d 470 (2d Cir. 2002) (finding that State Department reports "proved of little use to the Court, since they largely consisted (perhaps understandably) of broad, conclusory assertions as to the relative corruptibility of the Ecuadorian courts, with scant reference to the specifics, evidence, or application in the instant cases").

Courts have "cautioned against 'over-reliance' on the [State Department] Country Reports because of their potential for bias and the inability . . . to question their conclusions." *Zheng v. Gonzales*, 409 F.3d 804, 811 (7th Cir. 2005) (discussing use of State Department reports in asylum case). The statements and report contain "scant reference" to the underlying evidence, making it impossible for the Libyan State Defendants to challenge their conclusions. *See, e.g.*, Pls.' Ex. 4 (proclaiming that the evidence against Libya for LaBelle "is direct; it is precise; it is irrefutable," but failing to identify or explain what that evidence is). Therefore, the Libyan State Defendants are entitled to conduct discovery to ascertain the basis for the U.S. political conclusions as to Libya's responsibility for La Belle. Discovery will include subpoenas for all unclassified material and documents upon which the Reagan administration and the State Department relied in drawing conclusions as to Libya's responsibility. *See* Fed. R. Civ. P. 45(a)(1)(C); *Yousuf v. Samantar*, 451 F.3d 248, 257 (D.C. Cir. 2006) ("[W]e hold the Government is a 'person' subject to subpoena under Rule 45 regardless whether it is a party to the underlying litigation.").

IV.  **SUMMARY JUDGMENT ON LIABILITY MUST BE DENIED BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED**

A.  **Plaintiffs Fail To Establish A Basis For Summary Judgment On Liability As To The FSIA Private Cause Of Action**

For the same reason that this Court lacks subject-matter jurisdiction to hear Plaintiffs' Claims under 28 U.S.C. § 1605A — namely, that 28 U.S.C. § 1605A only covers personal injury claims caused by "an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act" — Plaintiffs lack a cause of action under 28 U.S.C. § 1605A(c).  Although 28 U.S.C. § 1605A(c) allows claims for "personal injury or death," personal injury (apart from death) is only possible as a result of torture, aircraft sabotage, or hostage taking.  Death, on the other hand, is a required (indeed, the only) component of a claim for an "extrajudicial killing."  The Libyan State Defendants hereby incorporate their arguments relating to Plaintiffs' standing to bring claims under Section 1605A of the FSIA contained in their Motion to Dismiss the Amended Complaint at 4-9 (Docket No. 47).

B.  **Plaintiffs' Motion Must Be Denied Because They Have Failed To Identify Any Substantive Law As The Basis For Alleged Liability**

Plaintiffs request partial summary judgment as to liability, yet fail to identify any substantive law for their "state law claims" that would serve as a predicate for such a liability determination.  Plaintiffs argue that the Court should apply the law of their domiciles at the time of the attack to decide their state law claims.  Plaintiffs then state that, "Plaintiffs' decedent's domicile at the time of the attack was the State of Georgia."  Pls.' Mot. at 17.  There is no factual basis to support this assertion — there is no decedent plaintiff in this case, nor are there any plaintiffs with a Georgia domicile.  Moreover, although Plaintiffs specify Georgia law, they do not cite a single Georgia case in support of their Motion.  Instead, Plaintiffs quote a case originating in this Court, purporting to interpret Illinois law.  *Id*. at 18 (quoting *Salazar v. Islamic*

*Republic of Iran*, 370 F. Supp. 2d 105, 115 (D.D.C. 2005), citing *Green v. Chicago Tribune Co.*, 675 N.E.2d 249, 257-58 (Ill. App. Ct. 1996)).  It is unclear how Georgia law applies to this case and even if it did, what the law of Georgia is relative to Plaintiffs' claims.  Plaintiffs' Motion should be denied on this basis alone.

### C.    Plaintiffs Fail To Establish The Essential Element Of Causation For Their Tort Claims

At least at the time Plaintiffs filed their original complaint on April 19, 2006, Clay resided in Tennessee and Johnson resided in Florida.  Therefore, Tennessee and Florida law may govern Plaintiffs' respective claims.  However, it is also possible that German law may provide the substantive law as the situs of the tort.  *See Bortell v. Eli Lilly and Co.*, 406 F. Supp. 2d 1 (D.D.C. 2005) (applying Pennsylvania law as the law of place of injury in a products liability suit, even where plaintiff's domicile was deemed California); *Perkins v. Marriott Int'l., Inc.*, 945 F. Supp. 282 (D.D.C. 1996) (applying Maryland law to plaintiffs' tort claims, including intentional infliction of emotional distress even though plaintiffs were domiciled in the District of Columbia, Maryland held stronger interests as the place of injury and in which the relationship between the parties was centered); *Godbey v. Frank E. Basil, Inc.*, 603 F. Supp. 775 (D.D.C. 1985) (holding that Saudi law would govern Virginia resident's false imprisonment and defamation claims, injuries alleged to have occurred in Saudi Arabia and that arose from an employment contract in Saudi Arabia).

Even assuming that Tennessee and Florida law were to apply, Plaintiffs must show causation to satisfy the elements of their claims.  *See Burroughs v. Magee*, 118 S.W.3d 323, 327-28 (Tenn. 2003) (stating that to establish a claim for negligence in Tennessee plaintiff must prove (1) duty owed; (2) conduct in breach of that duty; (3) injury or loss; (4) causation in fact; and (5) proximate or legal cause) (citation omitted); *Proto v. Graham*, 788 So.2d 393, 396 (Fla.

Dist. Ct. App. 2001) (stating, "Causation is an essential element of negligence, of which the plaintiff has the burden of proof") (quotation and citation omitted).  Here, Plaintiffs have not satisfied the causation element because they have not shown that "it is more likely than not" that the bombing and the defendants' conduct "was a substantial factor in bringing about the result[ant damages]."  *Tallahassee Furniture Co. v. Harrison*, 583 So. 2d 744, 755 (Fla. Dist. Ct. App. 1991) (stating that in Florida courts, "in order to carry the burden of proof on the issue of causation [in a negligence action], the plaintiff must present evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in the bringing about the result.") (quotations and citation omitted); *see also Proto*, 788 So.2d at 396 (stating, "A mere possibility of such causation is not enough" to satisfy the causation element in a negligence claim); *cf. Thompson v. Chautauqua Airlines*, No. 3:04-0811, 2005 WL 3216303, at *4 (M.D. Tenn. Nov. 28, 2005) (granting defendants' motion for summary judgment because plaintiff "failed to prove a sufficient causal connection" between the actions of the defendant (or lack thereof) and her injury).  Plaintiffs offer nothing more than the unverified allegations in the Amended Complaint and this is insufficient to discharge their summary judgment burden.

## CONCLUSION

For all the foregoing reasons, the Libyan State Defendants respectfully request that Plaintiffs' Motion for Partial Summary Judgment be denied in its entirety.

Dated:  April 15, 2008                          Respectfully submitted,

                                                **WHITE & CASE** LLP

                                                /s/ Nicole E. Erb
                                                Christopher M. Curran (D.C. Bar No. 408561)
                                                Francis A. Vasquez, Jr.(D.C. Bar No. 442161)
                                                Nicole E. Erb (D.C. Bar No. 466620)
                                                701 Thirteenth Street, N.W.
                                                Washington, DC 20005
                                                Tel.: (202) 626-3600
                                                Fax: (202) 639-9355

                                                *Counsel for the Socialist People's Libyan*
                                                *Arab Jamahiriya and the Jamahiriya*
                                                *Security Organization*