**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
DARYAL V. CLAY, *et al.*,                )
                                        )
            *Plaintiffs*,                )
                                        )
      v.                                 )          1:06-cv-00707-RWR
                                        )
SOCIALIST PEOPLE'S LIBYAN ARAB          )
JAMAHIRIYA, *et al.*,                    )
                                        )
            *Defendants*.                )
_____)


**THE LIBYAN STATE DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**


**WHITE & CASE** LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Tel.:  (202) 626-3600
Fax:  (202) 639-9355

*Counsel for the Socialist People's Libyan
Arab Jamahiriya and the Jamahiriya
Security Organization*

## <u>TABLE OF CONTENTS</u>

Page

I.    THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS ...........................................................................................................1

     A.    Plaintiffs' Prior Action Cannot Be Maintained Under The New Law And Should Be Dismissed As Jurisdictionally Time-Barred ...........................1

          **1.**    The Limitation Period Prescribed In Former Section 1605(f) Is Jurisdictional ................................................................................1

          **2.**    Section 1083 Does Not Revive Plaintiffs' Jurisdictionally-Deficient Action........................................................................................7

          **3.**    Equitable Tolling Does Not Save Plaintiffs' Jurisdictionally Time-Barred Action...............................................................................11

     B.    Plaintiffs' Personal Injury Action Does Not Implicate One Of The Requisite Predicate Bases Of Former Section 1605(a)(7) Or Section 1605A(a)(1).............15

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                    **PAGE**

*Arce v. Garcia,*
    434 F.3d 1254 (11th Cir. 2006) ........................................................12, 13

*Acree v. Republic of Iraq,*
    370 F.3d 41 (D.C. Cir. 2004) ...............................................................8

*Atl. Ins. v. Jordan,*
    229 F.2d 758 (D.C. Cir. 1955) ..............................................................9

*Bowles v. Russell,*
    127 S. Ct. 2360 (2007) ............................................................... *passim*

*Cada v. Baxter Healthcare Corp.,*
    920 F.2d 446 (7th Cir. 1990) ...............................................................15

*Chung v. Dep't of Justice,*
    333 F.3d 273 (D.C. Cir. 2003) ............................................................15

*Cicippio-Puleo v. Islamic Republic of Iran,*
    353 F.3d 1024 (D.C. Cir. 2004) ............................................................1

*Clarke v. Secs. Indus. Ass'n,*
    479 U.S. 388 (1987) ...........................................................................

*Colbert v. Potter,*
    471 F.3d 158 (D.C. Cir. 2006) .........................................................3,11

*Collett v. Socialist People's Libyan Arab Jamahiriya,*
    362 F. Supp. 2d 230 (D.D.C. 2005) ....................................................14

*Commc'ns Vending Corp. of Ariz. v. F.C.C.,*
    365 F.3d 1064 (D.C. Cir. 2004) ..........................................................15

*Daingerfield Island Protective Soc'y v. Lujan,*
    797 F. Supp. 25 (D.D.C. 1992); *aff'd*, 40 F.3d 442 (D.C. Cir. 1994)..........5

*Dammarrell v. Islamic Republic of Iran,*
    No. 01-2224JDB, 2005 WL 756090 (D.D.C. 2005) ................................17

*Diaz v. Kelly,*
    515 F.3d 149 (2d Cir. 2008)................................................................4

*Don't Tear It Down, Inc. v. Pennsylvania Ave. Dev. Corp.,*
    579 F. Supp. 1382 (D.D.C. 1984) .......................................................17

*Ellipso, Inc. v. Mann*,
  460 F.Supp.2d 99 (D.D.C. 2006) .................................................................6

*\*Estate of Buonocore v. Great Socialist People's Libyan Arab Jamahiriya*,
  No. 06-727 (GK), 2007 WL 2007509 (D.D.C. July 9, 2007)................................................12, 14

*Fernandez-Vargas v. Ashcroft*,
  126 S. Ct. 2422 (2006)...........................................................................7

*Flatow v. Islamic Republic of Iran*,
  999 F. Supp. 1 (D.D.C. 1998) ..................................................................14

*Garcia v. United States*,
  469 U.S. 70 (1984).............................................................................

*Henderson v. United States*,
  517 U.S. 654 (1996)............................................................................1

*IDEA Pub. Charter Sch. v. Belton*,
  No. Civ. A. 05-467 (RMC), 2006 WL 667072 (D.D.C. Mar. 15, 2006) ...................................

*In re ADC Telecommc'ns, Inc. Sec. Litig.*,
  331 F. Supp. 2d 799 (D. Minn. 2004).............................................................9

*I.N.S. v. St. Cyr*,
  533 U.S. 289 (2001)...........................................................................

*John R. Sand & Gravel Co. v. United States*,
  128 S. Ct. 750 (2008).................................................................... *passim*

*Kaiser Aluminum & Chem. Corp. v. Bonjorno*,
  494 U.S. 827 (1990)..........................................................................13

*\*Landgraf v. USI Film Prod.*,
  511 U.S. 244 (1994)........................................................................7, 10

*Legal Servs. Corp. v. Velazquez*,
  531 U.S. 533 (2001)...........................................................................

*Lindh v. Murphy*,
  521 U.S. 320 (1997).............................................................................7

*Lowe v. S.E.C.*,
  472 U.S. 181 (1985)...........................................................................15

*Morris v. People's Republic of China*,
  478 F. Supp. 2d 561 (S.D.N.Y. 2007).............................................................3

*Pace v. DiGuglielmo,*
 544 U.S. 408 (2005)............................................................................................12

*Peterson v. Islamic Republic of Iran,*
 264 F. Supp. 2d 46 (D.D.C. 2006)......................................................................14

*Phillips v. Heine,*
 984 F.2d 489 (D.C. Cir. 1993)............................................................................15

*Price v. Socialist People's Libyan Arab Jamahiriya,*
 294 F.3d 82 (D.C. Cir. 2002)........................................................................15, 16

*Pugh v. Socialist People's Libyan Arab Jamahiriya,*
 No. 02-02026 HHK, 2006 WL 2384915 (D.D.C. 2006) ....................................18

*Robinson v. Shell Oil Co.,*
 519 U.S. 337 (1997)..........................................................................................

*Rux v. Republic of Sudan,*
 04-CV-428, 2005 WL 2086202 (E.D.Va. Aug. 26, 2005)....................................2

*Rux v. Republic of Sudan,*
 --- F. Supp. 2d ---, 2007 WL 2127210 (E.D. Va. July 25, 2007)....................2, 3

*Saudi Arabia v. Nelson,*
 507 U.S. 349 (1993)..............................................................................................7

*Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.,*
 127 S. Ct. 1184 (2007)..........................................................................................7

*Sisso v. Islamic Republic of Iran,*
 No. 05-0394 (JDB) 2007 WL 2007582 (D.D.C. July 5, 2007)...........................17

*United States v. Dalm,*
 494 U.S. 596 (1990)..........................................................................................

*United States v. Wilson,*
 290 F.3d 347 (D.C. Cir. 2002) .............................................................................6

*Vine v. Republic of Iraq,*
 459 F. Supp. 2d 10 (D.D.C. 2006).....................................................................

*Wash. Post v. Wash.-Balt. Newspaper Guild Local 35,*
 787 F.2d 604 (D.C. Cir. 1986).......................................................................8, 12

*Williston Basin Interstate Pipeline Co. v. F.E.R.C.,*
 475 F.3d 330 (D.C. Cir. 2006)..............................................................................5

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*,
  296 F.3d 1154 (D.C. Cir. 2002) ................................................................6

*Wyatt v. Syrian Arab Republic*,
  362 F. Supp. 2d 103 (D.D.C. 2005) .................................................. *passim*

*Wyatt v. Syrian Arab Republic*,
  398 F. Supp. 2d 131 (D.D.C. 2005) .................................................2, 5, 14

## FEDERAL RULES, STATUTES, AND REGULATIONS

26 U.S.C. § 6511(a) ................................................................................3

26 U.S.C. § 7422(a) ................................................................................3

28 U.S.C. § 1346(a)(1)............................................................................3

28 U.S.C. § 1605A ...................................................................... *passim*

28 U.S.C. § 1605(a)(7) (repealed 2008) .......................................... *passim*

28 U.S.C. § 1605(f) (repealed 2008)................................................ *passim*

28 U.S.C. § 2107 ....................................................................................3

28 U.S.C. § 2501 .................................................................................3, 4

Fed Civ. R. P. 7 .....................................................................................6

Fed Civ. R. P. 8 .....................................................................................5

Fed. R. Civ. P. 12 ..................................................................................5

Nat'l Defense Authorization Act of 2008, Pub. L. No. 110-181 § 1083 .........................................

Federal Tort Claims Act, 28 U.S.C. § 2674 .....................................................

## LEGISLATIVE MATERIALS

Sen. Lautenberg, 154 Cong. Rec. S54, January 22, 2008.................................................

Foreign Sovereign Immunities Act: Hearing on S. 825 Before Subcomm. on Courts and
Admin. Practice of the S. Comm. on the Judiciary, 103rd Cong. 8 (1994)....................................16

Plaintiffs' original action filed under former Section 1605(a)(7) was ripe for dismissal on statute-of-limitations grounds before the new terrorism exception to the FSIA was enacted and nothing in that new law prevents dismissal on those grounds now.

## ARGUMENT

### I.     THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS

#### A.     Plaintiffs' Prior Action Cannot Be Maintained Under The New Law And Should Be Dismissed As Jurisdictionally Time-Barred

To overcome their bar to proceeding under the new law, Plaintiffs argue that: (1) the 10-year limitations period contained in former Section 1605(f) is somehow separable from the FSIA's other jurisdictional requirements (Opp'n at 19-23); (2) Section 1083 of the Defense Act not only applies to, but also resurrects, their jurisdictionally-deficient action (*id.* at 9-13); and (3) the Court should ignore D.C. Circuit precedent and impermissibly strain equitable tolling principles in order to make Plaintiffs' original complaint timely (*id.* at 13-19).  Despite Plaintiffs' arguments, this Court lacks subject-matter jurisdiction to hear this action and it must, therefore, be dismissed.

#### 1.     The Limitation Period Prescribed In Former Section 1605(f) Is Jurisdictional

Plaintiffs' action was flawed when first brought under former Section 1605(a)(7), a "jurisdiction conferring provision that [did] not otherwise provide a cause of action."  *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1032 (D.C. Cir. 2004).  Contrary to Plaintiffs' assertions (Opp'n at 19-23), the timeliness requirement of former Section 1605(f), which by its very terms was tied to former Section 1605(a)(7), was jurisdictional.  *See* Mot. to Dismiss at 3 (Dkt. No. 47); *John R. Sand & Gravel Co. v. United States*, 128 S. Ct. 750, 753 (2008); *Henderson v. United States*, 517 U.S. 654, 677 (1996) ("[W]e have long held that a statute of

limitations attached to a waiver of sovereign immunity . . . defines the limits of the district court's jurisdiction to hear a claim against the United States."); *see also Bowles v. Russell*, 127 S. Ct. 2360, 2365-66 (2007) ("Jurisdictional treatment of statutory time limits makes good sense . . . . [T]he notion of subject-matter jurisdiction obviously extends to classes of cases . . . falling within a court's adjudicatory authority, . . . but it is no less jurisdictional when Congress forbids federal courts from adjudicating an otherwise legitimate 'class of case' after a certain period has elapsed . . . ."). Supreme Court precedent supports this analysis and refutes Plaintiffs' argument (Opp'n at 21) that the limitations period cannot be jurisdictional simply because it did not appear in the same subsection as the other jurisdictional requirements. *See Bowles*, 127 S. Ct. at 2364 ("[T]he accepted fact is that some time limits are jurisdictional even though expressed in a separate statutory section from the jurisdictional grants . . . .") (internal quotations and citations omitted).

Indeed the mandatory instruction contained in Section 1605(f) that "[n]o action shall be maintained under subsection (a)(7)" unless it is brought within the specified time-frame presents a jurisdiction bar as to the entire "action" and is not limited to any particular claim. Further, Section 1604 leaves no doubt that former Section 1605(f) was jurisdictional: "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in [28 U.S.C. §§ 1605 – 1607]." Subsequent decisions in Plaintiffs' own cases also support this conclusion. Opp'n at 15 (citing *Wyatt v. Syrian Arab Republic*, 362 F. Supp. 2d 103, 145 (D.D.C. 2005)); *id*. at 20 (citing *Rux v. Republic of Sudan*, 04-CV-428, 2005 WL 2086202 (E.D. Va. Aug. 26, 2005)). In *Wyatt*, the court looked to the Federal Tort Claims Act ("FTCA") as analogous to the FSIA to determine that § 1605(f) was jurisdictional. 398 F. Supp. at 143. The court noted that the FTCA's limitations period is a "substantive part of the United States'

waiver of immunity" and other courts have described the FTCA's limitations period as "jurisdictional" in that the "requirement prescribed by a statute granting the right to sue the United States or a state is construed as a condition or qualification of the right; such a provision is in other words jurisdictional rather than a mere statute of limitations." 398 F. Supp. 2d at 143 (internal quotation and citation omitted). The court further held that:

> [W]hile Congress may choose to waive a foreign state's immunity and allow causes of action to be brought against it 'in the same manner and to the same extent as a private individual under like circumstances,' 28 U.S.C. § 1606, it is not therefore stripped of its authority to require its own statute of limitations to apply in cases against foreign states *as a condition* of that waiver. Congress, which alone has the right to determine when courts may exert jurisdiction over foreign states, must necessarily have the power to determine when such actions must be commenced.

*Id.* (emphasis added).

In *Rux v. Republic of Sudan*, --- F. Supp. 2d ---, 2007 WL 2127210, at *22 (E.D. Va. July 25, 2007), the court cites the above language from *Wyatt* with approval. Plaintiffs also misplace reliance on *Colbert* and *Morris*. Opp'n at 20. *Colbert* did not involve sovereign immunity or an alleged waiver. *See Colbert v. Potter*, 471 F.3d at 167 (affirming dismissal for failure to timely file suit under Title VII and refusing to toll the applicable limitations period). *Morris* is inapplicable because it did not involve a jurisdictional time bar. *See Morris v. People's Republic of China*, 478 F. Supp. 2d 561, 566, 571 (S.D.N.Y. 2007) (holding that New York statute of limitations applied to contract claims because "[w]hen a claim is brought under [the commercial activity exception of] the FSIA, the law of the forum state determines whether plaintiff's claim is time-barred.").

Plaintiffs' attempt to distinguish the Supreme Court's decision in *John R. Sand & Gravel Co. v. United States* fairs no better. *See* Opp'n at 20-23. First, although the statute at issue in *Sand* was 28 U.S.C. § 2501, the court considered other types of jurisdictional limitations periods

in its analysis. *See Sand*, 128 S. Ct. at 753 (discussing, *inter alia*, time limits for taking an appeal under 28 U.S.C. § 2107 and time limits for filing civil tax refund suits under 28 U.S.C. § 1346(a)(1) and 26 U.S.C. §§ 7422(a), 6511(a) (citing *Bowles v. Russell*, 127 S. Ct. at 2365-66, and *United States v. Dalm*, 494 U.S. 596, 601-02, 608-09 (1990))). Second, in spite of Plaintiffs' argument that the limitations period in the FSIA was "procedural," the *Sand* court's analysis counsels otherwise:

> Most statutes of limitations seek primarily to protect defendants against stale or unduly delayed claims. Thus, the law typically treats a limitations defense as an affirmative defense . . . . Some statutes of limitations, however, seek not so much to protect a defendant's case-specific interest in timeliness as to achieve a broader system-related goal, such as facilitating the administration of claims, *limiting the scope of a governmental waiver of sovereign immunity*, or promoting judicial efficiency . . . . As convenient shorthand, *the Court has sometimes referred to the time limitations in such statutes as "jurisdictional."*

*John R. Sand & Gravel Co.*, 128 S. Ct. at 753-54 (emphasis added) (citations omitted). Third, Plaintiffs suggest that the *Sand* court "primarily based its decision on longstanding precedent at issue." Opp'n at 21. While the *Sand* court did review precedent, it also took into consideration that the type of statute at issue was one that would strip the government of immunity. *John R. Sand & Gravel Co.*, 128 S. Ct. at 753-54. Fourth, Plaintiffs also argue that the *Sand* holding is limited to 28 U.S.C. § 2501, citing the Second Circuit's decision in *Diaz v. Kelly*. Opp'n at 22 (citing 515 F.3d 149 (2d Cir. 2008)). The *Diaz* court's apparent negative treatment of *Sand* is dicta. There, the court considered whether equitable tolling was available to prisoners who filed untimely petitions for writs of habeas corpus — not whether the limitations period was jurisdictional. *See Diaz v. Kelly*, 515 F.3d 149, 153-54 (2d Cir. 2008).

Plaintiffs further contend that former Section 1605(f)'s equitable tolling provision somehow makes the limitations period non-jurisdictional. Opp'n at 22. This contention misreads both the former statute and precedent. The *Sand* court noted that jurisdictional statutes

typically are more "absolute" and may forbid the court from taking into account equitable considerations. *John R. Sand & Gravel Co.*, 128 S. Ct. at 753. The jurisdictional nature of a limitations period, however, is not undermined simply because it may be tolled. *See Bowles*, 127 S. Ct. at 2368 (Souter, J., dissenting) ("[I]f a limit is taken to be jurisdictional, wavier becomes impossible, meritorious excuse irrelevant *(unless the statute so provides)*, and *sua sponte* consideration in the courts of appeals mandatory . . . .") (emphasis added).

Because the requirements of former Section 1605(f) were jurisdictional, defenses on this basis could be raised at any time — even on appeal. *See Williston Basin Interstate Pipeline Co. v. F.E.R.C.*, 475 F.3d 330, 336 (D.C. Cir. 2006) (subject matter jurisdiction "can never be forfeited or waived"). Thus, Plaintiffs' argument that the Libyan State Defendants somehow waived their limitations defense this case is wholly without foundation. *See* Opp'n at 19-23; *see also Wyatt*, 398 F. Supp. 2d 131, 142 n.7 (D.D.C. 2005) (considering the FSIA and finding that the Federal Rules of Civil Procedure did "not bar Syria from raising its statute of limitations arguments in this motion to dismiss the third amended complaint" even though it had not raised it in earlier actions). Indeed, courts in this district have held that a limitations defense raised before an answer cannot be waived. *See id.*; *Daingerfield Island Protective Soc'y v. Lujan*, 797 F. Supp. 25, 29 (D.D.C. 1992) (noting that a limitations defense "cannot be waived by the failure to interpose it in a motion under Rule 12."), *aff'd*, 40 F.3d 442 (D.C. Cir. 1994); Fed. R. Civ. P. 12(h)(1) (excluding subject-matter jurisdiction and failure to state a claim from waivable defenses).

Rule 8(c) of the Federal Rules of Civil Procedure, cited by Plaintiffs for the proposition that parties must raise certain defenses in "responding to a pleading," is inapposite to the case at bar. Opp'n at 20. Rather, Rule 12(b) governs when certain defenses must be raised in a

responsive pleading and when other defenses *may* be raised in a motion to dismiss. Rule 12(h) then provides the defenses that will be waived if not raised in a motion to dismiss. Defenses based on subject-matter jurisdiction and failure to state a claim will only be waived if not raised in the responsive pleading. It is well-settled in this district that a motion to dismiss is not a "responsive pleading." *See* Fed. R. Civ. P. 7 (defining types of pleadings); *Ellipso, Inc. v. Mann,* 460 F. Supp. 2d 99, 102 (D.D.C. 2006) (noting that a "motion to dismiss is not a responsive pleading"). The Libyan State Defendants have never filed a responsive pleading in this case and this is the first motion to dismiss in response to the amended complaint. In any event, contrary to Plaintiffs' assertions, the Libyan State Defendants raised the limitations period in their prior round of briefs in support of their motion to dismiss the original complaint and the parties have argued the issue in other briefs. *See* Defs.' Mot. to Dismiss at 13-14 (Dkt. No. 14); Defs.' Reply at 2-6 (Dkt. No. 24); *see also* Dkt. Nos. 25, 26, 27.

Finally, Plaintiffs urge the Court to find that the Libyan State Defendants "waived" their limitations defense by virtue of the policy objectives underlying former Section 1605(a)(7). Opp'n at 23. Essentially, Plaintiffs ask the Court to disregard the plain language of former Section 1605(f) and conclude that the Libyan State Defendants have waived their limitations defense in favor of policy considerations. *See United States v. Wilson,* 290 F.3d 347, 352-53 (D.C. Cir. 2002) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'") (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340 (1997)) ; *World Wide Minerals, Ltd. v. Republic of Kaz.,* 296 F.3d 1154, 1162 (D.C. Cir. 2002) ("In general, explicit waivers of sovereign immunity are narrowly construed 'in favor of the

sovereign' and are not enlarged beyond what the language requires.") (internal citations and quotation marks omitted).

> 2.     **Section 1083 Does Not Revive Plaintiffs' Jurisdictionally-Deficient Action.**

Plaintiffs argue that they are entitled to bring their action under Section 1605A, based on Section 1083(c)(2) ("Prior Actions") notwithstanding that their action was jurisdictionally time-barred. Opp'n at 9-10. Plaintiffs entirely ignore the *Landgraf* presumption against retroactive application of federal statutes unless Congress includes express language to warrant such application. *See* Mot. to Dismiss at 3 (citing *Lindh v. Murphy*, 521 U.S. 320 (1997), *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994), and *Fernandez-Vargas v. Ashcroft*, 126 S. Ct. 2422 (2006)). As discussed in the motion to dismiss, Plaintiffs did not qualify to make such a motion or refile their action under Section 1083(c)(2)(A) because their action was jurisdictionally time-barred such that Plaintiffs' action could not have been "adversely affected" by any lack of a cause of action against the Libyan State Defendants. Mot. to Dismiss at 3-4 (citing *Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*, 127 S. Ct. 1184, 1191 (2007)).

In addition, Plaintiffs cannot claim they were "adversely affected" because, as they concede, the Court never made any ruling adverse to their action. *See* Opp'n at 4; Mar. 3, 2008 Mem. Order (Dkt. No. 32) (granting Plaintiffs' motion to amend the complaint and denying the Libyan State Defendants' motion to dismiss as moot). While the new law offers no guidance as to the meaning of the ambiguous phrase "adversely affected," this phrase must be narrowly construed under *Lindh*, 521 U.S. at 325-26 (stating the presumption against the retroactive application of statutes), as well as the presumption against waivers of statutory immunity, *see Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (indicating that "a foreign state is presumptively immune from the jurisdiction of United States courts" unless one of the

enumerated exceptions applies).   Such a narrow construction demands the conclusion that Plaintiffs' action was not adversely affected, and may not be brought under Section 1605A.

Plaintiffs next argue that Section 1083(c)(2)(B) ("Defenses Waived"), which includes a waiver of the defense of statute of limitations, demonstrates that Congress intended Plaintiffs' action to fall within the scope of the new law.  Opp'n at 10-11.  The plain language of the statute contradicts Plaintiffs' argument.  *See Wash. Post*, 787 F.2d at 606 (requiring courts to begin their statutory analysis with the plain language of the statute).   Plaintiffs conspicuously omit from their quotation of Section 1083(c)(2)(B) (Opp'n at 10-11) that provision's express language limiting defenses waived "to the extent that such [a] defense[] [is] *based on the claim in the action*."  28 U.S.C. § 1605A note (emphasis added).  As established above, the FSIA is a purely jurisdictional statute.  *See Cicippio-Puleo*, 353 F.3d at 1032.  The limitations period contained in § 1605(f), upon which the Libyan State Defendants rely is likewise jurisdictional.  *See*, *supra*, I.A.1.  Thus, the limitations defense that the Libyan State Defendants raise is not "based on" any "claim" in this action; instead, it is expressly tied to § 1605(a)(7), a purely jurisdictional provision.  Therefore, by its terms, Section 1083(c)(2)(B) is inapplicable to Plaintiffs' action.  Moreover, if the Court had had the opportunity to decide the Libyan State Defendants' earlier motion to dismiss for lack of subject-matter jurisdiction, Plaintiffs would not have had any "claim" to bring under Section 1083(c)(2)(A).

In any event, because Plaintiffs cannot satisfy the requirements of Section 1083(c)(2)(A), they cannot avail themselves of Section 1083(c)(2)(B).   When evaluating the applicability of Section 1083(c)(2)(B), it is necessary to consider it in context, with specific attention to its "placement and purpose in the statutory scheme."  *Acree v. Republic of Iraq*, 370 F.3d 41, 52 (D.C. Cir. 2004) (citations omitted); *see also Atl. Ins. v. Jordan*, 229 F.2d 758, 764 (D.C. Cir.

1955) (Prettyman, J., dissenting) ("The statute should be read in the order in which it is written. . . . The last step should not be carried backward so as to nullify the first.").

Further, Plaintiffs erroneously assert that the Libyan State Defendants are asking the Court to read the phrase "timely commenced" contained in Section 1083(c)(3) (on "Related Actions") into Section 1083(c)(2)(A). Opp'n at 11-12. The Libyan State Defendants are asking the Court to do no such thing. Subject-matter jurisdiction is essential to maintain any action. Because Plaintiffs have not satisfied the jurisdictional prerequisites of former Sections 1605(a)(7) and 1605(f), they have no "prior action" under Section 1083(c)(2)(A). Essentially, Plaintiffs ask this Court to revive their jurisdictionally-deficient action, despite the Supreme Court's admonitions that courts should be loathe to so. *See, e.g.*, *In re ADC Telecommc'ns, Inc. Sec. Litig.*, 331 F. Supp. 2d 799, 802-03 (D. Minn. 2004) (reiterating the explicit mandate required before allowing a statute "to revive previously time-barred claims") (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 317 (2001)).

Plaintiffs further argue that any timeliness requirement in Section 1083(c)(2)(B) would "render a portion of Section 1083(c)(3) meaningless." Opp'n at 12. Plaintiffs are wrong. The language of Section 1083(c)(3) ("Related Actions") only supports the Libyan State Defendants' position. The timeliness requirement contained in Section 1083(c)(3) ensures that a predicate action, upon which a "Related Action" is based, is not itself jurisdictionally deficient. Without such a timeliness requirement, a "Related Action" could survive a jurisdictionally-deficient predicate action that was dismissed after the "Related Action" was filed. No such timeliness provision is required for "prior actions, as such actions necessarily require their own sound jurisdictional basis.

Plaintiffs additionally resort to after-the-fact floor statements by Sen. Frank Lautenberg, to support their argument that their action may be brought within the scope of the new law through Section 1083(c)(2)(A). Opp'n at 12 (quoting 154 CONG. REC. S54-01 (daily ed. Jan. 22, 2008) (statement of Sen. Lautenberg)). First, the Supreme Court has explicitly held that such legislative history should be afforded little to no weight. *See Landgraf*, 511 U.S. at 263 n.15 (discrediting value of floor statements and noting Senator Danforth's observations that "[a] court would be well advised to take with a large grain of salt floor debate and statements placed in the CONGRESSIONAL RECORD which purport to create an interpretation for the legislation that is before us") (citation omitted); *Garcia v. United States*, 469 U.S. 70, 76, 76 n.3 (1984) (holding Supreme Court has "eschewed reliance on the passing comments of one Member, and casual statements from the floor debates," which would "substitute [the Courts] for the Congress in one of its important functions.") (citations omitted); *Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 407 (1987) (declining to credit purported legislative history made after Congress had already passed the act, particularly when made by a biased sponsor). Second, Sen. Lautenberg was not one of the sponsors of the 1996 terrorism exception and thus his floor statements in connection with the 2008 legislation do not retroactively inform the legislative intent of Congress in 1996 regarding when the limitations period in former Section 1605(f) would begin to run.

Lastly, Section 1605A(b) does not apply to Plaintiffs' action (Opp'n at 12), because this case was not "brought or maintained under [Section 1605A]." 28 U.S.C. § 1605A(b). It is undisputed that Plaintiffs brought this action under former Section 1605(a)(7), and seek retroactive application of 1605A under Section 1083(c), which includes subsection 1083(c)(2)(A) ("Prior Actions"). *See* Pls.' Mot. for Leave to File Am. Compl. at 2, 10 (Dkt. No. 28). Plaintiffs moved to amend their prior complaint under Section 1083(c); they did not file a

new complaint under Section 1605A(b).  *See* Pls.' Am. Compl. (Dkt. No. 33).  Thus, Section 1605A(b), which applies to newly filed claims, is inapplicable to Plaintiffs' action.

In short, Plaintiffs' original action was ripe for dismissal long before the enactment of the new law, and it is only by happenstance that Plaintiffs' original action was before the Court in any form at the time the new law was enacted.  Plaintiffs' action just as easily could have been a closed case on the grounds that was jurisdictionally untimely and thus not eligible for re-filing under Section 1083(c)(2)(A).  The Supreme Court's admonitions in *Landgraf* and its progeny do not permit such chance retroactive application of the new law to Plaintiffs' action.  *See Landgraf*, 521 U.S. at 263 (requiring "unambiguous directive" to authorize retroactive application of statute).

### 3.   Equitable Tolling Does Not Save Plaintiffs' Jurisdictionally Time-Barred Action

Plaintiffs do not dispute that their claims arose on April 5, 1986.  Opp'n at 4, 14.  Yet they fail to explain why they did not file this action until April 19, 2006.  Plaintiffs argue only that the "Defendants' sovereign immunity created a complete disability to the filing of a lawsuit by Plaintiffs."  Opp'n at 14.  This "complete disability," however, fails to explain why Plaintiffs waited almost another ten years *after* the terrorism exception to immunity was enacted before filing this suit.  Plaintiffs instead ask this Court to ignore D.C. Circuit precedent on the equitable tolling doctrine and impermissibly strain that doctrine without any factual support as to why the Court should do so.  Opp'n at 13 (asking that the Court adopt a "liberal approach" in calculating the statute of limitations); *see also Colbert v. Potter*, 471 F.3d at 167 (holding that "appellant has articulated no sound reason for this court to consider equitable tolling of the 90-day filing time limit.").

As this Circuit has indicated "[t]he starting point for all questions of statutory interpretation is, of course, the plain language of the provisions at issue." *Wash. Post v. Wash.-Balt. Newspaper Guild Local 35*, 787 F.2d 604, 606 (D.C. Cir. 1986). The plain language of former Section 1605(f) provides that "[n]o action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose." 28 U.S.C. § 1605(f). While the second sentence of former Section 1605(f) allows courts to apply principles of equitable tolling in calculating the limitations period, equitable tolling principles, themselves, have limits and do not provide the "automatic extension" of the full statutory time period as Plaintiffs suggest. *See Estate of Buonocore v. Great Socialist People's Libyan Arab Jamahiriya*, No. 06-727 (GK), 2007 WL 2007509, at *2 (D.D.C. July 9, 2007).

Equitable tolling allows courts "to protect a plaintiff who, through no fault of his or the defendant's, would be barred unfairly by strict application of the statute." *Phillips v. Heine*, 984 F.2d 489, 492 (D.C. Cir. 1993). The tolling period is only for as long as is reasonably necessary for the plaintiffs to bring their action after the impediment outside their control is lifted. *See Estate of Buonocore*, 2007 WL 2007509, at *4 ("The doctrine of equitable tolling 'gives the plaintiff extra time *only* if he needs it.' . . . Plaintiffs have made no showing that they needed ten additional years after 1996 to file their Complaint.") (citation omitted); *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (noting that a plaintiff who invokes equitable tolling principles has the burden to show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."). Plaintiffs fail to supply any reason to support extending the tolling period for any period of time beyond April 24, 1996. On this basis alone, Plaintiffs' reliance upon *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006) must be rejected. Opp'n at 13-14. In that case, the court found tolling appropriate where the plaintiffs, although

their claims arose in 1979 and 1980, could not have brought claims until (i) they arrived in the United States in 1983, (ii) the El Salvadorian war ceased in 1992 where filing an action prior to this date may have jeopardized their own and their families' lives, or (3) 1989 when defendants themselves arrived in the United States. *Arce*, 434 F.3d at 1263-64. No factors like these are present here.

Plaintiffs here simply ask, without more, that this Court consider congressional intent in interpreting the statute and its inclusion of equitable tolling principles. *See* Opp'n at 13-14. Congressional intent, as expressed through the language of the statute, is at odds with Plaintiffs' argument. Had Congress intended that the 10-year limitation period start running in 1996 for all plaintiffs whose cause of action arose prior to 1996, it could have said so directly. For example, Section 1605(f) could have been written: "For all causes of action arising prior to the date of enactment, the limitation period shall begin running from April 24, 1996." Instead, Congress chose to begin the running of the statute of limitations "not later than 10 years after the date on which the cause of action *arose*." *See* 28 U.S.C. § 1605(f) (emphasis added). The plain statutory language controls. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 837 (1990) ("[W]here congressional intent is clear, it governs.").

Plaintiffs concede that this Court's interpretation of Section 1605(f) in *Buonocore* and *Vine* "would result in the dismissal of this case." Opp'n at 16. Plaintiffs' reliance on *Collett*, *Wyatt*, *Peterson*, and *Flatow* to avoid this outcome is misplaced. *See* Opp'n at 15. Indeed, this Court already considered and rejected *Collett*, *Wyatt*, *Peterson*, and *Flatow* in *Buonocore* and *Vine*. *See Buonocore,* 2007 WL 2007509, at *2 (rejecting plaintiffs' reliance on *Collett*, *Wyatt*, *Peterson*, and *Flatow*); *Vine v. Republic of Iraq*, 459 F. Supp. 2d 10, 21 n.9 (D.D.C. 2006) (concluding *Peterson* and *Wyatt* unpersuasive on limitations issue).

The statute-of-limitations issue was not fully litigated in either *Peterson* or *Flatow*, which were cases that resulted in default judgments. *See Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46, 48 (D.D.C. 2006); *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 6 (D.D.C. 1998). *See also Estate of Buonocore v. Great Socialist People's Libyan Arab Jamahiriya*, No. 06-727 (GK), 2007 WL 20007509, at *2 (D.D.C. July 9, 2007) (recognizing same); *IDEA Pub. Charter Sch. v. Belton*, No. 05-467(RMC), 2006 WL 667072, at *5 n.6 (D.D.C. Mar. 15, 2006) ("Judicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence not analyzed.") (quoting *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 557 (2001) (Scalia, J., dissenting)).

Moreover, in *Wyatt*, plaintiffs brought their cause of action within the 10-year limitations period and equitable tolling was unnecessary. *See Wyatt v. Syrian Arab Republic*, 398 F. Supp. 2d 131, 133, 134, 145 (D.D.C. 2005) (cause of action arose at the earliest on August 30, 1991, and plaintiffs filed suit in July 2001). And *Collett* provides nothing more than a conclusory statement about former Section 1605(f) in the context of considering the Torture Victim Protection Act's statute of limitations. *See Collett v. Socialist People's Libyan Arab Jamahiriya*, 362 F. Supp. 2d 230, 242 (D.D.C. 2005). The *Collett* court did not analyze any precedent regarding the FSIA's limitations period. *Id.*

As their only support for the proposition that *Vine* and *Buonocore* be rejected, Plaintiffs reference an after-the-fact floor statement by Sen. Frank Lautenberg. As discussed above, those statements should be afforded no weight and in any event do not inform legislative intent of a bill enacted 12 years prior. *See*, *supra*, I.A.2.

Plaintiffs next urge the Court to disregard *Vine*'s and *Buonocore*'s holdings that equitable tolling provides only a reasonable time after the tolling circumstance is lifted, based on these

cases' reference to the D.C. Circuit's decision in *Phillips v. Heine*, 984 F.2d 489 (D.C. Cir.

1993). *See* Opp'n at 17-19. The *Phillips* decision is consistent with equitable tolling precedent

of this Circuit. *See Chung v. Dep't of Justice*, 333 F.3d 273, 279 (D.C. Cir. 2003) (indicating

that equitable tolling "merely ensures that the plaintiff is not, by dint of circumstances beyond

his control, deprived of a 'reasonable time' in which to file suit"); *Commc'ns Vending Corp. of*

*Ariz. v. F.C.C.*, 365 F.3d 1064, 1075 (D.C. Cir. 2004) ("We too have set a high hurdle for

equitable tolling, allowing a statute to be tolled 'only in extraordinary and carefully

circumscribed instances.'") (citations omitted). Plaintiffs argue that the "reasonable time" test

undermines "the policy objectives of the statutes of limitations." Opp'n at 18. This argument

falls flat in the FSIA context because *Phillips* was decided by the D.C. Circuit three years before

Congress passed Section 1605(f), and *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir.

1990) — another case referenced by Plaintiffs — was decided six years before Section 1605(f)'s

passage. Because Congress is presumed to know the state of the law, it could have explicitly

rejected the "reasonable time" test in the statutory language of § 1605(f). *See Lowe v. S.E.C.*,

472 U.S. 181, 205 n.50 (1985) ("It is always appropriate to assume that our elected officials, like

other citizens, know the law."). Congress did not do so and, therefore, the principles of equitable

tolling announced in *Phillips* and *Cada* inform the Court's statutory interpretation.

**B.      Plaintiffs' Personal Injury Action Does Not Implicate One Of The Requisite
           Predicate Bases Of Former Section 1605(a)(7) Or Section 1605A(a)(1)**

The D.C. Circuit's analysis of the history leading up to the enactment of the 1996

terrorism exception demonstrates that there is nothing "peculiar" (Opp'n at 23-24) in the Libyan

State Defendants' interpretation of Section 1605A(a)(1). *See Price v. Socialist People's Libyan*

*Arab Jamahiriya*, 294 F.3d 82, 87 (D.C. Cir. 2002) (citing legislative history among other

authorities). In particular, the D.C. Circuit recognized that the original FSIA was "not intended

as human rights legislation" (*id*. at 87) and executive branch officials had "consistently resisted" (*id*. at 89) a terrorism exception because they "feared that the proposed amendment to [the] FSIA might cause other nations to respond in kind, thus potentially subjecting the American government to suit in foreign countries for actions taken in the United States" (*id*.). *See also Foreign Sovereign Immunities Act: Hearing on S. 825 Before Subcomm. on Courts and Administrative Practice of the S. Comm on the Judiciary*, 103rd Cong. 8 (1994) (statement of Stuart Schiffer, Deputy Assistant Attorney General, U.S. Dept. of Justice) ("As we create new jurisdiction in our courts, we have to bear in mind that we expose ourselves to the creation of new remedies which will be used against us in foreign courts."). The D.C. Circuit further noted that it was out of this "delicate legislative compromise" that the 1996 terrorism exception was born. *Price*, 294 F.3d at 89.

With this history in mind, the Libyan State Defendants' argument — that Plaintiffs' "personal injury" was not "caused by" one of the four predicate acts listed in Section 1605A(a)(1) — is nothing more than the plain and narrow interpretation that Congress intended in the carefully worded version of the bill that was passed. *See* Mot. to Dismiss at 5-7. Plaintiffs' interpretation of the Libyan State Defendants' position, i.e., that this interpretation would "conveniently exempt" defendants from all "acts of large scale terrorism," is unfounded. Opp'n at 24. Specifically, Plaintiffs argue that actions based on the Pan Am 103 and UTA Flight 772 bombings would escape the Court's jurisdiction under this theory. But Congress expressly provided for jurisdiction over those actions by listing the predicate act of "aircraft sabotage" in former Section 1605(a)(7) and in Section 1605A(a)(1). The Libyan State Defendants' narrow construction of Section 1605A(a)(1) — in contrast to Plaintiffs' expansive interpretation — is more true to the plain language of the statute and finds support in the legislative history. In

particular, Congress rejected a prior bill containing broad language that would have provided subject-matter jurisdiction over personal injuries caused by "acts of international terrorism." *See* Mot. to Dismiss at 6-7 (quoting S. 825, 103rd Cong. (as introduced by S. Comm. on the Judiciary, April 27, 1993)).  As discussed above, it is entirely appropriate for this Court to consider such a prior bill and its legislative history in interpreting the scope of Section 1605A(a)(1). *See Don't Tear It Down, Inc.*, 579 F. Supp. at 1389.  Further, Plaintiffs' continued reliance (Opp'n at 24-25) on Senator Lautenberg's general floor statements again adds nothing to whether a "personal injury" (as opposed to a "death") can be correctly (and logically) interpreted to have been caused by an "extrajudicial killing."

The Libyan State Defendants' interpretation is even less "peculiar" as acknowledged by the court in *Dammarell v. Islamic Republic of Iran*, which observed that: "There may be some question whether plaintiffs who were survivors of the bombing may seek recourse under the FSIA's exception to sovereign immunity in the case of 'extrajudicial killing.'"  281 F. Supp. 2d 105, 198 n.20 (D.D.C. 2003).  Plaintiffs do not address the Libyan State Defendants' argument that to read Section 1605A(a)(1) as permitting jurisdiction for personal injuries caused by "extrajudicial killing" of another would create the absurd  situation that an injured person's ability to bring a claim would depend of the happenstance of another's death.   Mot. to Dismiss at 7-8.  Relying on *Pugh*, Plaintiffs assert that courts look to the attack as a whole rather than at its impact on each individual plaintiff or his or her resulting injury.  Opp'n at 26.  Subject-matter jurisdiction in *Pugh*, however, was predicated upon the extrajudicial killing (and aircraft sabotage) of *all* victims onboard UTA flight 772, thus the issue of whether the death of one individual converts the personal injuries of another into actionable claims under the FSIA was not before the court.  *See Pugh*, 2006 WL 2384915, at *1 (D.D.C. May 11, 2006) ("The

explosion killed all 170 people aboard the DC-10 airplane, including seven Americans."). Likewise, the extrajudicial killings which formed the basis for jurisdiction in *Rux* and *Sisso* were based upon the deaths of plaintiffs' family members.  *Rux*, 495 F. Supp. 2d 541 at 554-555 (finding the deaths of seventeen American sailors to be an extrajudicial killing); *Sisso*, 2007 WL 2007582 at *7 (D.D.C. July 5, 2007) (finding that deaths of Rozana Sisso and the other victims of the suicide attack were extrajudicial killings within the meaning of the Flatow Amendment). None of Plaintiffs' cases involve analysis of whether surviving personal injury victims may invoke jurisdiction based on the extrajudicial killing of another.

Lastly, Plaintiffs completely ignore Rule 17's clear command that only real parties in interest may bring an action.  *See* Mot. to Dismiss at 9-10.  The purported agreement by the U.S. Army to help locate the unidentified potential Doe Plaintiffs in the event of settlement or judgment (Opp'n at 27) does nothing to change the fact that Rule 17 prohibits Plaintiffs Clay, Johnson, or their attorneys from asserting the future claims of the Doe Plaintiffs.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Amended Complaint in its entirety with prejudice.  The Libyan State Defendants expressly reserve all rights, defenses, privileges, and immunities.

Dated:  May 27, 2008                    Respectfully submitted,

**WHITE & CASE** LLP

/s/ Nicole E. Erb
Christopher M. Curran (D.C. Bar No. 408561)
Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Nicole E. Erb (D.C. Bar No. 466620)

701 Thirteenth Street, N.W.
Washington, DC 20005
Tel.: (202) 626-3600
Fax: (202) 639-9355

*Counsel for the Socialist People's Libyan Arab Jamahiriya and the Jamahiriya Security Organization*